June Term, 1860.

BIRD
v.
MORRISON et al.

---

## BIRD vs. MORRISON and others.

Where it was stipulated, in a written agreement for a mercantile copartnership, entered into in March, 1838, "that a lot should be purchased for the concern, and a store be erected thereon," it may be shown, by parol evidence, that a lot, afterwards (in the same year) conveyed by absolute deed to one of the partners, and upon which a store was erected, and *used for the partnership business*, was purchased and improved with the partnership means, and is partnership property.

*It seems* that if the written agreement had not contained any such stipulation, such evidence would have been admissible under the rule of equity then recognized, that a trust in real estate resulted in favor of the party who paid the purchase money therefor.

An agreement for a partnership in dealings in real estate, is within the statute of frauds, and void unless in writing. The fact that the parties making such agreement are engaged at the time in a mercantile partnership, does not take it out of the statute.

Where A, B, C and D, were the members of a mercantile copartnership, and D received conveyances from his *copartners*, by absolute deeds, of divers pieces of real estate, upon which improvements were afterwards made under his direction, as ostensible owner, but which were *never used for any of the part-*

*nership purposes*, it is not competent for his copartners to show that such real estate is partnership property, or held upon any trust for their benefit, by proving a *parol* agreement with D, at the time said conveyances were made, that he should hold said real estate (with other real estate previously owned by him) as partnership property, to be improved by their equal contributions, and should reconvey their undivided shares of said property to them upon request; and that the improvements were made with the means of the partnership, or by the equal contributions of its members; the admission of such evidence being contrary to the statute of frauds.

Such an agreement, if proved, did not constitute the parties thereto copartners in the real estate thus conveyed. A mere community of interest in land does not make men partners; there must be some joint adventure, and an agreement to share in the profit and loss of the undertaking.

APPEAL from the circuit court for *Dane* county.

This was a suit in equity, commenced in March, 1854, by the complainant *Bird*, for the purpose of dissolving an alleged copartnership between himself and *James Morrison, John F. O'Neil* and *James D. Doty*, and for an accounting, and distribution of the partnership effects, &c.

The bill alleges, that on the 19th of March, 1838, the complainant, and said *Morrison, O'Neil* and *Doty*, entered into partnership in the mercantile business in Madison, Wisconsin, under a written agreement, which recited that said *Morrison* should be the acting partner, and should conduct the business in the name of "*James Morrison & Co.*;" that the capital stock should be twenty thousand dollars, of which each partner should supply his equal proportion as required; that a stock of merchandize, which said *Morrison* then had at Helena, should be removed to Madison, and received at cost and charges; that said business should be continued until the 1st day of January, 1840, unless sooner dissolved by mutual consent, and "that a lot in said town should be purchased for the concern, and a store and other necessary buildings erected thereon."

The bill also alleged, that in the spring of 1838, in pursuance of said agreement, said partners opened a store of merchandise in said town, each contributing his share to the capital stock from time to time when required, said *Morrison* taking the management thereof, as the acting partner, and "that soon thereafter, in the same year, the said copartners agreed and entered into an arrangement to *extend* the business

of their said copartnership, so as to embrace dealing in and improvements of certain real estate in said town of Madison, by each of said partners agreeing to contribute and put in, as capital stock for that purpose, an equal share of real estate, consisting of lots in said town, and to contribute an equal amount of means required to improve the same, and more especially for the construction of a hotel and the necessary buildings and improvements connected therewith;" and that during the same year, in accordance with said agreement, and without any other consideration whatever, "the said *James Morrison* and the said *John F. O'Neil* being the joint owners of lots 5, 6 and 7, in block 101, and the said *Doty* and the complainant being the equal joint owners of lot 8, in block 101, and of lots 1, 2 and 3, in block 104, and the said *Doty* being the sole owner of lots 1, 2, 3 and 4, in block 262, all in said town, they (said *Bird, O'Neil* and *Doty*) caused the said lots to be deeded to the said *James Morrison* in fee, to be used and treated as the capital stock of said copartnership in real estate, with the understanding and agreement by and between all of said copartners, that the said *James Morrison* should thereafter reconvey to each of the other copartners, his just share of said lots, consisting of an undivided one-fourth of the same, with the improvements thereon, when he, said *Morrison*, should be requested so to do by all or either of said copartners."

The bill also states, that after the conveyance to said *Morrison*, of said lots, the same and the improvements that were being made thereon, were treated ostensibly as the property of said *Morrison* alone, and the business appertaining thereto, ostensibly conducted in his name, and "that said real estate was greatly improved and enhanced in value, by the erection of valuable buildings thereon, by the use of the means and the capital of the said copartnership," the complainant contributing for the use and benefit of said copartnership, in money and personal property and labor, the sum of ten thousand dollars and upwards, "by placing the same in the hands and control of said *Morrison* to be used by him for that purpose."

The bill also alleges, that the copartnership has never been

dissolved; that large profits were made in the said mercantile business, and large rents and incomes have accrued from the said real estate, all of which have been received by said *Morrison*, who, though often requested, has refused to make any settlement of the affairs of said copartnership; that said *Morrison* has conveyed said real estate to one *Dean*, (who is also made a defendant,) without any valuable consideration therefor, and with full notice of the equitable rights of the complainant and *O'Neil* and *Doty* in the same. Prayer, that the partnership be declared dissolved, an account taken of the partnership dealings, and an equitable distribution made of the effects of said copartnership, &c.

The answer of the defendant *James Morrison*, admits the making of the written agreement referred to in the bill, for a mercantile copartnership between himself, the complainant *Bird*, and said *O'Neil* and *Doty*, but denies that the complainant, *Bird*, ever contributed his share, or any part thereof, in money or otherwise, to the capital stock of said company; and denies also, according to the best of his remembrance, information and belief, that said *O'Neil* and *Doty* ever contributed their share of the capital stock of said company, or any part thereof, in money or otherwise, adding, that if said *O'Neil* and *Doty* "ever did so, and they have not been fully satisfied by the defendant *James Morrison*, the courts of equity are open to them, to have their rights established against him."

The answer further states, that in June, 1838, the said *Morrison* brought to the town of Madison, the stock of merchandise belonging to him at Helena, referred to in the agreement of partnership, and supposing that the complainant, *Bird*, and said *O'Neil* and *Doty*, would, within a reasonable time, pay their respective shares of the cost and charges of said merchandise, so as to constitute the same capital stock of said company, according to the terms of said agreement, commenced business and opened books in said company's name, he, said *Morrison*, being the acting partner; but after waiting for some length of time, the said complainant and *O'Neil* and *Doty* failed entirely to take an account of said stock and pay him their respective shares of the cost and

charges thereof, although required so to do, and supposing that they had abandoned said agreement, he proceeded thereafter to trade on and dispose of his said merchandise, in his own name and for his own use and benefit.

The answer also expressly denies the agreement alleged in the bill, to *extend* the business of the alleged copartnership "so as to embrace dealing in and improvements of real estate in said town of Madison, by each of said partners agreeing to contribute and put in as capital stock for that purpose, an equal share of real estate, consisting of lots in said town, and to contribute an equal amount of the means required to improve the same."

The answer also expressly denies, that the complainant, *Bird*, and said *O'Neil* and *Doty*, caused the lots described in the bill to be deeded in fee to said *Morrison*, to be used and treated as the capital stock in said copartnership in real estate, with the understanding and agreement by and between all of said copartners, that he should thereafter reconvey to each of them his just share, being an undivided fourth thereof, with the improvements, when requested to do so by all or either of said copartners; and denies that said *O'Neil* and himself were, in 1838, the joint owners of said lots 5, 6 and 7, in block 101, or that said *Doty* and *Bird* were joint owners, in 1838, of said lot 8, in block 101, and said lots 1, 2 and 3, in block 104, or that said *Doty* was the owner of said lots 1, 2, 3 and 4, in block 262, after the 8th day of May, 1838; but on the contrary, alleges, that he, the said *Morrison*, was in 1838, the sole owner of said lot 8, in block 101, and of lots 1, 2 and 3, in block 104, under a deed executed to him for a valuable consideration, by said *Doty*, as the trustee of the Four Lake Company, dated December 1st, 1836, and was also the sole owner of lots 1, 2, 3 and 4, in block 262, under a deed executed to him for a valuable consideration, by said *Doty*, as such trustee, dated May 8th, 1838, all of which property he purchased with his own means, and not otherwise.

The answer admits that said lots have been greatly improved by the erection of valuable buildings thereon, but avers that these improvements were not made with the means

of said copartnership, but with the private means and funds of said defendant *Morrison*, with the exception of between four and five hundred dollars, which the complainant contributed towards building what was known as the American Hotel, on lot 8, in block 101, as a subscriber to a joint stock company for the erection thereof, and alleges that no one having contributed anything towards said building but himself and the complainant, he repaid to the complainant the amount so contributed by him, and received from him a release of all his, the complainant's, title and interest in said lot and building, by deed dated Oct. 5th, 1839. The answer denies that said *Bird* ever paid or furnished any other money, personal property, or labor, for the benefit of said alleged copartnership. The answer admits that no formal dissolution of copartnership between the complainant and *Morrison*, *O'Niel* and *Doty*, was ever declared, because the copartnership never was consummated.

The answers of *Doty* and *O'Neil* substantially admit all the material allegations of the bill.

The answer of the defendant *Dean*, alleges that he purchased the real estate referred to in the bill for a valuable consideration, without a knowledge of any claim of *Bird*, *Doty* or *O'Neil* to any part thereof, or any notice that said *Morrison* held it in trust for them or either of them.

The complainant filed a general replication to the answers.

On the hearing of the cause, no evidence was offered of any written agreement to extend the alleged partnership between said *Bird*, *Morrison*, *O'Neil* and *Doty*, so as to embrace dealing in and improvement of real estate, or of any written agreement that lots conveyed by either of said parties to *Morrison*, should be used as the capital stock of a copartnership in real estate, but the complainant, who was sworn as a witness, testified, that the agreement between the parties in reference to the alleged partnership in real estate, was a verbal one.

The deeds which *Morrison* held for the real estate referred to, were absolute on their face.

The record contains a large amount of testimony upon the disputed questions of fact, whether the partnership in regard

to the mercantile business was ever consummated; whether the alleged agreement was made to *extend* the partnership so as to embrace dealing in and improvement of real estate; whether any real estate was conveyed to *Morrison* under such agreement; whether improvements were made thereon with partnership funds; and whether *Dean* purchased the real estate with notice, &c.; but as the evidence is referred to in the opinion of the court, so far as is necessary to an understanding of the legal principles involved, any further statement of it is omitted.

The circuit court found as *facts*, that on the 19th of March, 1838, the complainant *Bird*, and the defendants *Morrison*, *O'Neil* and *Doty*, entered into a copartnership in the mercantile business, under the written agreement set forth in the bill of complaint; that in June of that year, in pursuance of that agreement, the said *Morrison* removed his stock of goods therein referred to, from Helena to said town of Madison, and put them into a store provided by the partners for that purpose, and commenced the mercantile business in the name of *James Morrison & Co.*, he being the acting partner; that each of said partners, at or about the commencement of said copartnership business, contributed towards the capital stock of the same; that said partnership business was carried on under the management of *Morrison* as the acting partner, until some time in the year 1841 or 1842, when the merchandise belonging thereto was entirely sold and disposed of; that "on or about the 8th day of May, 1838, the said partners entered into a *verbal* agreement to extend the business of said copartnership, so as to embrace therein dealings in and improvements of certain real estate, to wit: town lots in said town of Madison, and each of them agreed to put in and contribute for that purpose an equal share of lots in said town, and to contribute equally the means required to improve the same, particularly for the purpose of building a hotel, and the necessary buildings and improvements connected therewith, as alleged in the complaint;" that "in pursuance of said last mentioned agreement, the defendant *James D. Doty*, on the said 8th day of May, caused lots 1, 2, 3 and 4, in block 262, in said town of Madison, to be con-

veyed to said *James Morrison* in fee, for the use and to be treated as a part of the real estate of said copartnership; that during the summer of 1838, the defendant *James Morrison* acquired the title to and became the owner in fee, of lots 5, 6 and 7, in block 101; but whether he owned the same in his own right solely, or for himself and the defendant *O'Neil*, equally, does not appear from the proofs; that on the 13th day of October, 1838, the complainant *Bird*, and the defendant *Doty*, pursuant to said last mentioned agreement, by a deed executed by *Doty*, as trustee of the Four Lake Company, to said *Morrison*, dated the 1st day of December, 1836, but in fact executed, acknowledged and delivered on the said 13th day of October, 1838, caused lot 8, in block 101, and lots 1, 2 and 3, in block 104, as described in the complaint, to be conveyed in fee to the said *Morrison*, to be used and treated as part of the capital stock of said firm; that said complainant *Bird*, and defendant *Doty*, caused said conveyances of said lots to be made to the defendant *James Morrison*, as and for each of their undivided fourth parts of the capital stock of said firm in real estate, to be by each of them contributed, with the understanding on their part, that the defendants *James Morrison* and *John F. O'Neil* were then equal owners of lots 5, 6 and 7, in block 101, described in the complaint, and that the same then became and were to be the property of said copartnership, as the shares put in and contributed by said *Morrison* and *O'Neil*, and with the further understanding and agreement, that the said *James Morrison* should thereafter reconvey to each of said partners his just share of said real estate, consisting of an undivided one-fourth thereof, with the improvements, when he should be requested to do so by said partners; that after the conveyance to said *Morrison* of said real estate, " the same, with the improvements made thereon, remained in the exclusive possession of, was managed by, and treated as the property of said *Morrison*, and the business appertaining thereto conducted ostensibly in his name;" and "that said real estate was improved by the erection of a hotel and other valuable improvements thereon, by use of the means and capital stock of said firm, and the contributions of said partners."

Vol. XII—10

June Term,
1860.

Bird
v.
Morrison et al.

The court further found as *facts*, that on the 16th of July, 1839, said *James Morrison*, for a valuable consideration, conveyed said lots 5, 6, 7 and 8, in block 101, and lots 1, 2 and 3, in block 104, to one Lewis Morrison, who purchased without notice of the rights or interests of said copartners in and to the same, and on the 26th of May, 1851, the defendant *Dean*, with full knowledge of the rights and interest of said partners, purchased said lots from said Lewis Morrison, and received a conveyance therefor; that on the 1st day of May, 1851, the said *Dean*, with full notice of the equitable claims of the said *Bird*, *O'Neil* and *Doty*, received from the defendant *James Morrison* a conveyance of said lots 1, 2, 3 and 4, in block 262, by which the legal title thereto was, and still is, vested in him; and that said copartnership has never been dissolved, but remains in full force in respect to the property and effects of said firm.

The conclusions of law announced by the circuit court were: That the defendant *N. W. Dean* is entitled to hold and retain, as his sole property, lots 5, 6, 7 and 8, in block 101, and lots 1, 2 and 3, in block 104, free from all equitable claim on the part of the plaintiff *Bird*, and the defendants *O'Neil* and *Doty*; and that he holds the legal title to lots 1, 2, 3 and 4, in block 262, subject to the equitable claims of said *Bird*, *O'Neil* and *Doty*, and that the same are liable to distribution between the said plaintiff and *O'Neil* and *Doty*, according to their respective interests, as above found and set forth; that said copartnership be dissolved by the judgment of this court; that an account of all the copartnership dealings, business and property, both in the mercantile and real estate business, and of the rents, issues, profits and losses of said business, and of the amounts paid in and drawn out by each of said partners in said business, be taken and stated in the usual manner; that a referee be appointed to take and state such account; that interlocutory judgment be entered in accordance with the said finding of facts and conclusions of law.

The defendants *Morrison* and *Dean* severally filed exceptions to so much of the finding of the court as to facts, and its conclusions of law, as were adverse to their respective in-

terests, and an interlocutory judgment being entered in ac-
cordance with such finding of facts and conclusions of law,
the said *Morrison* and *Dean* appealed to this court.

*Chauncey Abbott*, for appellants, after an argument on the
questions of fact involved in the case, said: It remains to
enquire and determine what was the character of the alleged
agreement between the complainant and *Morrison*, *Doty* and
*O'Neil*, relating to the *real estate*, and what is the law by
which that agreement, and the testimony offered to prove it,
must be governed and controlled.

The case of *Rasdall's Administrators vs. Rasdall*, 9 Wis.,
379, fully covers this part of the case, and obviates the ne-
cessity of any appeal to other authorities. That case decides:
First. That in case of a deed absolute on its face, parol tes-
timony cannot be admitted to prove a trust. Second. That
the refusal of the grantee, in a deed absolute upon its face,
to apply the property to the purposes verbally agreed upon,
between him and the grantor, before or at the time such deed
was executed, and an appropriation of such property to his
own use, is not in law a fraud, that warrants the admission
of parol testimony to establish a trust. Third. Parol testi-
mony can only be allowed where fraud was used in procur-
ing the deed, and that a verbal agreement to use the property
in a particular way which the grantee afterwards refuses to
comply with, is not such fraud. Fraud in procuring the deed
must be alleged and proved. In many particulars the case
cited is parallel with the one at bar. In each case it is alleged
that the deed was made by mutual agreement and under-
standing of the parties. No fraud is alleged in procuring
the deeds in either case. In each case the trust is denied by
the defendant, and in each case sought to be proved by parol
testimony. In many respects, that case is much stronger,
and goes much farther in excluding parol testimony to
establish a trust, than is demanded in this case. Nor is the
case at bar relieved in any way by the allegation that the
real estate in controversy is partnership property, and put in
by the partners as capital stock in the alleged company.
The plaintiff offers no testimony which the law can admit,
in support of this allegation. This court, in the case above

June Term,
1860.

BIRD
v.
MORRISON et al.

referred to, speaking of parol testimony, says: "The law forbids us to be informed that there was a trust, by this kind of testimony." We are not unmindful that it has been held in several states, that real estate, purchased with partnership funds, for partnership purposes, and so used and treated by the partners, will be held to be partnership property, as capital stock, and liable to be treated as personal property. It is not necessary to controvert that position in this case, or to determine whether that rule shall prevail in this court. In all the leading cases on that subject, the controversy was about the rule of law that should prevail, and not about the facts. The question was, admitting that real estate be purchased with partnership funds, used and regarded as partnership property, what character does that impress upon it? Does it go to the administrator or heir? Is the widow entitled to dower?

In the case of *Hoxie vs. Carr*, 1 Sumner's Rep., 173, it was admitted that the property was paid for with partnership funds, and was used for partnership purposes; it was conveyed to the partners as tenants in common; they were a manufacturing company, and the property was a cotton mill. The deed being to the partners as tenants in common, gave rise to the question whether the mill was part of the partnership property. No question about parol testimony arose in the case. The judge remarks, page 188: "And I further agree that as a general rule, a resulting trust cannot arise in contradiction to the terms of the deed. But it does not seem to me that the resulting trust asserted in the present case, is liable to any exceptions on either of these grounds." The deed itself and the written articles of copartnership were the evidence upon which the court based its opinion and judgment in that case. The same is true of all the other cases on this subject. The leading facts, that the property was purchased with partnership funds, and used and treated as partnership property, were either admitted by the pleadings or became a matter of construction on the deeds and other written evidence. This is equally true in the case of *Pierce vs. Trigg's heirs*, 10 Leigh, 406; *Burnside vs. Merrick*, 4 Met., 537; *Howard vs. Priest*, 5 Met., 582; and *Sigourney vs. Munn*,

7 Conn., 11. The rule of evidence as to permitting parol testimony to establish a trust or vary the terms of a deed, is the same, whether the parties be partners or not. The rule of evidence cannot be changed, and the the statute of fraud evaded, by an allegation and proof of a partnership If the evidence of the alleged agreement relating to real estate rests in parol, it is within the statute of frauds, and the agreement cannot be enforced.

*A. D. Smith* and *J. G. Knapp*, for the respondent, *Bird:*

*A. L. Collins* for *Doty*, and *Ryan & Crawford* for *O'Neil:*

The appellants have excepted to both the finding of the facts and the conclusions of law. So far as the exceptions to the findings of fact are concerned, they cannot avail the appellants, because they did not move for a new trial. *Hutchinson vs. Eaton,* 9 Wis., 226; *Davis vs. Judd,* 11 Wis., 11; *Hayward vs. Ormsbee,* id., 3. So far as the store and lot for the place of business of the copartnership is, or was concerned, it was provided for in the articles of agreement, and whether the title was in *Morrison* or not, when procured, *it* was partnership property, and must be treated according to the law regulating partnerships, as assets of the partnership. Coll. on Partnership, § 135, and notes; *Dyer vs. Clark,* 5 Met., 562; *Howard vs. Priest,* 5 id., 582; *Sigourney vs. Munn,* 7 Conn., 11; *Pierce vs. Trigg's heirs,* 10 Leigh, 406; Story's Eq. Jur., §§ 252, 256, 674, 768 and 1265; *Phillips vs. Phillips,* 1 Mylne & Keene, 649; *Broom vs. Broom,* 3 id., 443; *Hoxie vs. Carr,* 1 Sumner, 173; *Houghton vs. Houghton,* 11 Sim., 491; 3 Kent. (4th edition), 36–39. Story's Eq. Jur., §§ 674, 675, 1207; Cary on Part., 27, 28.

The defendant *Morrison* cannot object to testimony in this case, " because it tends to establish an interest in lands by parol." The complainant has no occasion to rely upon parol agreements simply, to take the case out of the statute of frauds. The relation between the parties gives character to their transactions, and raises up out of. their transactions, such a trust as no statute of frauds can put down, but just such a trust as courts of equity always enforce when appealed to. *Jenkins vs. Eldredge,* 3 Story's C. C. Rep., 181; Story's Eq. Jur., §§ 1207, 980.

We might safely admit the doctrine, that no trust resting in parol, can be set up in *opposition* to the deeds to *Morrison*, which are absolute on their face. The trust, we claim, grew out of the relations of the parties, and is clearly deducible from the nature of the business and enterprise in which they were engaged; and the placing of the title in *Morrison* was entirely consistent with the relations and business of the parties. 3 Story C. C. Rep. 288.

If the trust in *Morrison* was a naked trust simply, to be established by his parol declaration or promise to convey to the plaintiff and the defendants *Doty* and *O'Neil*, the case would stand on entirely different grounds. But it is a trust coupled with an interest—*Morrison* holding as well for *himself* as for *Bird, Doty* and *O'Neil*; a trust not to be established by proof of *Morrison's* parol agreement to convey, or his parol declaration of trust, but an implied or resulting trust, not within the statute of frauds; a trust not simply *deducible* from the relations of the parties, and the circumstances attending the conveyances to *Morrison*, but actually *forced* upon the mind on viewing the relations of the parties and their business transactions. *Jenkins vs. Eldredge, supra,* 286–9; Story's Eq. Jur. § 980. The relation of the parties before the conveyance to *Morrison*, supplied the contract to hold in trust, &c., and makes this a part of the original undertaking partly performed, and wholly so as to *Bird*, &c., by their several conveyances to *Morrison*.

The statute of frauds does not apply to resulting or implied trusts, and cannot be made to reach the case at bar. Story's Eq. Jur. §§ 674, 972, 980, 1198.

The whole of the property and real estate mentioned in the bill of complaint, was partnership property, and held, used and treated as such by *Morrison*, as well as by *Bird* and the others. It can make no difference in law or in equity, whether the property was put into the concern by the individual partners as capital stock, or was purchased with money contributed by the partners, as capital stock for company uses and purposes. If the former was in effect the transaction in this case, and the title was placed in *Morrison* accordingly, a trust *resulted* in favor of the

partners, and *resulting* trusts and implied trusts are not affected by the statute of frauds. Story's Eq. Jur. §§ 674, 972–980, 1198; Co. Litt., 290 b, Butler's Notes § 8; Bac. Abr. Trusts (C); *Lamplugh vs. Lamplugh*, Pr. Wms., 112, 113.

In cases of resulting and implied trusts, the law raises the promise or declaration of trust, for the very reason that there is no express trust created by writing, and this promise or trust must be supported by the situation and circumstances of the parties to be affected by it. And these relations and circumstances may be established by parol evidence or otherwise. *Goodwin vs. Gilbert*, 9 Mass., 510; *Jackson vs. Matsdorf, &c.*, 11 Johns, 91; *Jackson vs. Sternbergh*, 1 Johns. Cas., 153; *Foot vs. Colvin*, 3 Johns., 216; *Jackson ex dem. Whitlock vs. Mills*, 13 Johns., 463.

*By the Court*, PAINE, J. We think the court below properly found the existence of the original agreement of partnership set forth in the complaint. The answer of the defendant *Morrison*, admitting the execution of the agreement, and that, in pursuance of it, he brought his stock of goods to Madison, and opened the store, as the acting partner, and opened books in the name of the company, establishes this branch of the plaintiff's case in the first instance, and devolves upon *Morrison* the burden of showing that such partnership ceased after having been so entered upon. His counsel insist that it was abandoned in fact, without ever having been entered upon at all. But we do not think this position is sustained, either by his answer or by the evidence. The answer itself only asserts, on information and belief, that *Doty* and *O'Neil* had never contributed their shares of the capital, or any part thereof, and then adds, that if they had done so, and had not been satisfied by said *Morrison*, "the courts of equity were open to them," &c. This kind of denial is not calculated to free the mind from a suspicion that the party denying had quite a distinct impression that the fact might possibly be otherwise. And it does not go far to support the theory that the partnership agreement was abandoned. The evidence also, though not

of the clearest or most satisfactory character, goes to show that it was continued and not abandoned. The testimony of Seymour is positive, that quite a large amount of goods belonging to *Bird*, were put into the store. After the business had been conducted for a considerable time, *Morrison* still gave receipts in the name of *Morrison & Co.* Goods came to the store marked in their name. It is true, there are some circumstances apparently conflicting with either theory of the case. Thus it is somewhat singular that *Bird*, *Doty* and *O'Neil* should have so long remained silent, without calling for an account, or inquiring particularly into the progress or success of the enterprise. This may perhaps be explained by the relation in which they stood to the building of the capitol, and the fact that workmen were paid out of the store. On the other hand, there is no evidence that *Morrison* ever called on either of the other parties to contribute anything, or ever made any inquiries why they did not, or whether they proposed to abide by the agreement as made. And this is about as singular as their course. The probability is, that the parties were not very desirous of giving publicity to their connection, and that this is to account for an absence of much on both sides that would otherwise be expected. But the making of the agreement being explicitly admitted, as also the fact that it was entered upon, we think the answer fails to show that it was abandoned, and that the evidence shows such a continuation of it, as entitles the plaintiff to an account, as to the mercantile partnership provided for by the written agreement.

But the most difficult question in the case grows out of the alleged subsequent agreement, by parol, to extend the partnership to dealing in real estate, and the allegation that, in pursuance of it, the other partners conveyed to *Morrison* divers lots by absolute deeds, upon an understanding that he was to hold them in trust for the partnership, and to reconvey to each his interest when required. The question at once arises, whether this agreement is not within the statute of frauds.

In the case of *Rasdall's Administrators vs. Rasdall*, decided at the last term, (9 Wis., 379,) we held that parol evidence

was inadmissible to establish an express trust in land con-
veyed by an absolute deed.  And the appellants' counsel
contend that this case depends on the same principle and
must be governed by that decision.  We are unable to see
why this result does not follow, unless, as claimed on the
other side, the fact that there was a partnership here, makes
the case an exception and takes it out of the statute.  We
have carefully examined the authorities cited, and such oth-
ers as we could find upon the subject, and we do not think
they go to that extent.  It is only held that where real
estate is purchased by partners with partnership funds, for
partnership purposes, it is subject to an implied trust in favor
of the partnership debts, including those due the individual
partners, and this whether the title be taken to the partners
jointly, so that they would at law be tenants in common, or
whether it be taken in the name of a part only.  Story Eq.
Jur., § 1207, and cases cited in note 2 ; Coder vs. Huling, 27
Penn. St., 84 ; Matlock vs. Matlock, 5 Ind., 403 ; Dyer vs. Clark,
5 Met., 562 ; Fall River Whaling Co. and others vs. Borden,
10 Cush., 458.

These cases and those mentioned in them, are of two
classes ; those where the real estate was purchased with part-
nership funds, and those where the parties, by their written
agreements, had clearly established the partnership character
of the land in question.  So far as the first class is concern-
ed, we can see nothing more in the doctrine they hold, than
an application of the ordinary rule respecting implied or re-
sulting trusts.  That rule is, that a trust results in favor of
the party who pays the consideration.  Therefore, where a
partnership pays the consideration, a trust results in favor of
that.  But those trusts are not within the statute, and there-
fore no question arose under it.

In the other class of cases, there was no dispute as to the
partnership character of the real estate.  In most of them
the parties owned it jointly, so that there was no question as
to the title.  And in such cases, the courts have held that it
was to be treated as partnership property, so far as the pay-
ment of the debts of the partnership was concerned, though
for other purposes it was governed by the rules ordinarily

June Term, 1860.

BIRD

v.

MORRISON et al.

applicable to real estate. *Cookson vs. Cookson*, 8 Sim., 529 ; *Peck vs. Fisher*, 7 Cush., 386. The question was not under the statute of frauds, but simply how far real estate owned by a partnership was to be regarded as personal property, and how far it was to be treated as other real estate held by joint title. Thus it will be seen in the case in 10 Cushing, before cited, that the court explicitly states, that "there is no question between competing claimants of the land as land, and of course no controversy as to title, or as to the relations of the statute of frauds to any collision of interest in real estate." It is true, the court had before remarked, that " the relation of the subject to the statute of frauds" was the "straining point in law of the whole inquiry." But the point then under consideration was, whether the partnership could be proved by parol, so as to attach to the real estate the character of partnership property, the actual condition of the title being entirely consistent therewith. Now it appeared in the case, that the "cost of the purchase went into the partnership accounts, that the estates were entered in the company books as company property, and that as portions were sold for profit from time to time, the proceeds were merged in the general funds of the copartnership." I am unable, therefore, to see any substantial distinction, so far as the question of the statute of frauds is concerned, between this case and that of *Dyer vs. Clark*. The title being joint, the fact of partnership may be proved by parol, and that the parties acquired the property as partners and treated it as such, and then, upon these facts, the law attaches to it the character of partnership property, and implies whatever trusts that character requires. And if we properly understand the cases that have sanctioned the admissibility of parol evidence of partnership, to attach to real estate a trust character in favor of the firm, it has been placed upon the ground of implied trusts, so that it was without the statute of frauds. Yet this case in Cushing seems to leave it uncertain, whether it was assumed to be within the statute, and the written evidence sufficient, or without the statute, and no written evidence necessary. It does not state very clearly any definite rule upon which it proceeds, but we do not understand it as

an authority to go further than this, that where the title to real estate is entirely consistent with the fact that it is held as partnership property, the fact that it was acquired as such, and was so held, may be shown by parol to give it that character.

There is still another class of cases which establish the proposition that real estate may be regarded as an incident to a trading or manufacturing business, and that a partnership in the business being shown, the law implies that the one holding the legal title to such real estate, holds it in trust for the partners. Some instances of this kind are given in the case in 10 Cushing. The case of *Forster vs. Hale*, 5 Vesey, 308, is of the same character. The Lord Chancellor said that the partnership in carrying on the colliery being proved as a fact, the lease of the land was an incident to the business, and although the title was in one, there would be a resulting trust in favor of the partners.

These cases, therefore, go no further than to establish three propositions:

1. Where real estate is bought with partnership funds for partnership purposes, there is a resulting trust in favor of the partnership, though the title be taken in the name of one.

2. Where the title is held by all the partners jointly, so as to be entirely consistent with the character of partnership property, the fact of partnership may be shown by parol, and that the property was held for partnership purposes, and from these facts the law will imply its partnership character, and such trusts as result therefrom.

3. A partnership in any branch of trade or business may be shown by parol as an existing fact, and then, whatever real estate is held for the purpose of such business, is regarded as an incident thereto, and the law will imply a trust in favor of the partnership where the legal title is not in all.

Now, without examining whether any of these propositions stand among the many successful invasions upon this statute, it is obvious that none of them goes to the extent of saying, that a bald parol agreement for a partnership in real estate as such, may be shown, to create a trust in land held

by one of the parties, under a deed absolute on its face. Nor do we think that such is the law. We have found only one case that affords any sanction for such an idea, which is that of *Dale vs. Hamilton*, 5 Hare, 269. But it was the opinion only of the Vice-Chancellor, and he admits, virtually, that his decision would be a repeal of the statute. He says, "When the proposition was first advanced by the plaintiff, I confess it appeared to me that to admit the agreement to the extent contended for, would virtually be to repeal the statute of frauds, or nearly so; for if a party, by alleging an interest in land of any specific kind, can escape from that safe-guard against fraud and perjury which the statute has provided, it remains only that those who are prepared by fraud and perjury to invade the rights of another, shall make that specific interest (to which, it is said, the act does not extend) the ground of their claim, and the statute is at once evaded. Thus, if A alleges that B agreed to give him an interest in land, the statute applies; but if he adds that the land was to be improved and resold at their joint risk, for profit and loss, the statute does not apply."

This brief extract clearly exposes the fallacy of the proposition; and yet the Vice-Chancellor went on to sustain it, upon the ground of authority. But we do not think any that he cited support the doctrine, or go further than those we have before alluded to. On the other hand, there is an elaborate opinion by Judge STORY, in *Smith vs. Burnham*, 3 Sum., 435, in which he holds such an agreement to be clearly within the statute of frauds and void. See also Collyer on Partnership, § 3, note; *Henderson vs. Hudson*, 1 Mun., 510. If the authorities, therefore, were equally divided upon the point, we should be inclined to follow those which uphold the law, rather than such as admit that they repeal it, for we are unable to understand by what authority courts can repeal a statute.

And what safety would there be, if the proposition were once established, that by alleging a partnership, the statute of frauds is entirely avoided, and the parties may then prove whatever interest in land they please by parol, against the absolute title of the deeds? What would hinder the separ-

June Term,
1860.

BIRD
v.
MORRISON et al.

ate real estate of any partner from being converted into partnership property, by proof of a mere verbal agreement? What would hinder the absolute title of any man, whether partner or not, from being changed into a trust estate in the same way? Nothing whatever. For the statute assumed that there were those ready, as the Vice-Chancellor said, to invade the right of others by fraud and perjury. Let it be known, then, that a partnership avoids the statute, and all that would be necessary would be for the fraud and perjury to establish that also, and then every title would be open to attack. We do not feel called upon, even if we had authority, to overturn a statute for the purpose of exposing the title to real estate to such uncertainties. It may be urged, that the same evils may, to a certain extent, result from the rules before referred to in regard to implied trusts in favor of partnerships. But the facilities for fraud are not half so great under them. They require proof of the partnership as an actual existing fact—a partnership doing business, having property and using it; and it is not so easy to establish this by false evidence, as it is to show a mere verbal agreement. And it may be remarked, that even the doctrine concerning resulting trusts, could not, perhaps, prevail as the law now is in this state, it having been very materially modified by statute.

We are of opinion, therefore, that even if the allegations in the complaint, respecting the subsequent agreement as to dealings in real estate, should be held to show a partnership, yet the absolute title of *Morrison*, under his deeds, could not be changed into a trust estate by virtue of such verbal agreement. But although this point was not made upon the argument, we are satisfied that the allegations of the bill are not sufficient to show a partnership in respect to any of the real estate, except such as was acquired for the store. True, it alleges that the partnership was extended to dealing in real estate, but it then proceeds to state, specifically, what such dealing was to consist in, and what was the actual agreement with respect to the lots conveyed by the other partners to *Morrison*. And these specific allegations must control the general words, and if they do not show a part-

June Term, 1860.

BIRD
v.
MORRISON et al.

nership, then none is averred. The mode, then, by which this partnership in real estate was to be established, was, according to the complaint, as follows: "By each of said partners agreeing to contribute and put in, as capital stock for that purpose, an equal share of real estate, consisting of town lots in said town of Madison, and to contribute an equal amount of means required to improve the same, and more especially for the construction of a hotel, and the necessary buildings and improvements connected therewith." Then, after averring that the other partners did accordingly convey to *Morrison* certain lots in fee, "as the capital stock of said copartnership in real estate," it proceeds to allege that it was "with the understanding and agreement, by and between all of said copartners, that the said *James Morrison* should thereafter reconvey to each of the other three copartners, his just share of said lots and real estate, consisting of an undivided one-fourth of said lots, with the improvements thereon, when he, the said *Morrison*, should be requested so to do, by all or either of the copartners."

Now, what constitutes this a copartnership? We are unable to perceive. Standing alone, it is nothing more than a conveyance of certain lots by three persons to another, with an understanding that they were to be jointly improved, and he was then to reconvey to each his share. The element of risk, and of profit and loss in conducting the business, is lacking. For a joint interest in the increase of value of real estate, either by its rise, or by improvements put on by parties jointly owning it, does not constitute a partnership. Otherwise all joint owners would become partners, for they are always jointly interested in the profit of increased value as well as in the loss by depreciation. But, to make a partnership, there must be a dealing in the article for the purpose of making profit from the dealing, and that is not provided for here.

It may be admitted that dealing in real estate may be the proper subject of a copartnership agreement, though this has sometimes been held otherwise. *Coles vs. Coles*, 15 Johns., 159; *Baker vs. Wheeler*, 8 Wend., 505. It was there held that the title to real estate was of such a nature as prevented the

application to that kind of property, of the rules of law applicable to partnership property. And as we have already seen, the joint acquisition by partners of real estate, with partnership funds and for partnership purposes, vests in them the title as tenants in common at law, and it is only by going into equity that it is made subject to the implied trust as partnership property. But it seems to be now established, that real estate may be alone the subject of a copartnership. This point is considered in the case in 10 Cush., before cited, and in Collyer on Part., § 51, note 1. But to make it a partnership, there must be a dealing from which profit or loss may arise. Thus if the rule is as stated in *Brady vs. Colhoun*, 1 Penn., 140, that "a partnership in land may be limited to the purchasing only, the profit and loss being divisible as stock," this case does not come up to that, for here there was no purchasing, the agreement relating to lands which the parties then had. In the case of *Ludlow vs. Cooper*, 4 Ohio State Rep., this question arose. The court, after alluding to the rule where real estate is bought with partnership funds, and used for carrying on partnership business, proceeds as follows: "In the case now under consideration, however, the entries were not made with partnership funds, nor were the lands to be used as a *means* of carrying on any partnership business, other than the purchase and sale of real estate. It is very clear that although the land was not purchased with partnership funds, but was to be purchased with separate funds of *Cooper* and *Ludlow* in equal portions, the property was to be considered partnership property, so far as real estate could be so considered and treated; that it was, by the agreement, to be *sold* and *converted into money*, and each partner to share and share alike in the profits, and of course to share in the losses." And upon this ground, that by the agreement, which was in writing, the property was to be sold, and they were to share in the proceeds, the court held it a partnership. And the implication is that except for that, they would have held otherwise. If the bill had alleged that the partnership extended to the carrying on of the hotel business, that would have been a partnership, and might, so far as the hotel lots were concerned, have laid

# 160 CASES IN THE SUPREME COURT

the foundation for applying the doctrine of implied trust to the real estate used for the hotel, as being incident to the business. But it only alleges that they were to build a hotel. And this does not make it a partnership more than it would if they had built a boarding house or a mill. In *Sikes vs. Work*, 6 Gray, 433, the parties had purchased a lot jointly, and one had built a boarding house on it, with the consent of the other. They did not at the time contemplate going into business in it, but did actually form a partnership in keeping a boarding house, which was conducted for three years. The court said: "The evidence in this case fails to show a partnership in regard to the real estate owned by the parties. There was no agreement between them to share the profit and loss of the joint undertaking, which is the essential and distinguishing feature of the contract of copartnership."

Neither does the agreement to share equally the expense of building the improvements make it a partnership. In *Noyes vs. Cushman*, 25 Vt., 390, the defendants had purchased a grist mill and privilege, under an agreement to rebuild it and share the expense equally. The court said: "Their mutual obligation to rebuild and repair does not necessarily constitute them partners, for, as observed by Judge Bronson, in *Porter vs. McLure*, 15 Wend., 187, 'they may or may not become partners in carrying on the milling business.' A mere community of interest in real or personal estate, does not constitute a partnership. But where a purchase of that character is made, and the premises are rebuilt or repaired for the purpose of prosecuting some joint enterprise or adventure, under an agreement to share in the profit and loss of the undertaking, the contract then becomes one constituting a partnership."

In the case alluded to in 15 Wend., the defendants owned a mill-site and had contracted for the erection of a mill. The court said: "The mill when completed, like the site which it occupied, would be real estate, and the defendants would hold it by the same tenure by which they held the land. Whatever that tenure might be, it would not constitute them partners; they might or might not become part-

ners in carrying on the milling business. A community of interest in land does not make men partners, nor does a mere community of interest in personal property. There must be some joint adventure, and an agreement to share in the profit and loss of the undertaking."

Upon all these authorities, we think there was no partnership in the real estate, even according to the facts alleged in the bill. It seems to have been nothing more than an agreement to convey the title to certain lots owned by the three, to *Morrison;* they were then to put certain improvements upon them, and upon those which *Morrison* was to. put in, and then he was to convey to each of the others an undivided fourth part, on request. There was to be no purchasing of lands, no sale, nothing in which they were to share the profit and loss. The complaint excludes all idea that there was to be any sale of these lands for the purposes of profit. For if such was the case, then all the allegations in respect to the purchase by *Dean,* and his notice, &c., are out of place. For if the property was partnership property, and the title was placed in *Morrison* for the purpose of dealing with it as such, then he could sell the whole interest, and though the purchaser had notice of such partnership he would undoubtedly take a good title. But the bill was framed upon the theory that there was to be no sale, but that the parties were to retain their respective interests, and have them reconveyed. There can be no doubt that this agreement respecting the real estate, standing alone, would not amount to a partnership. Does the fact that the parties were engaged in a mercantile partnership give it any different effect? We are unable to see that it does. For certainly it cannot be said that wherever.a partnership exists, that changes the law with respect to agreements made by its members about real estate outside of that partnership. We have already seen that a partnership may be made the ground of implying certain trusts in real estate used in the business, or acquired with its funds. But this furnishes no reason for saying that where the members of a partnership make an agreement with respect to real estate which they own separately, the law applicable to such agree-

June Term, 1860.

BIRD
v.
MORRISON et al.

ment is any different from what it would have been if such partnership had not existed.

In the case of *Coder vs. Huling*, 27 Penn. St., 84, the court say: "When two partners, engaged as such in a particular business specified in their articles, buy land not necessary for their business, but with views and purposes beyond and outside of it, such land is held by them as tenants in common; it is not partnership property." And if such lands would be held to be outside of the partnership, so much the more would lands which the partners owned separately, and not used in any way for the partnership purposes, be entirely unaffected by it, and any agreement they might make respecting it would stand upon the same footing as to its legal effect, as though such partnership did not exist. If such agreement would be void within the statute of frauds, such partnership would not prevent that effect. If it would not in law amount to a partnership as to such real estate, then the existing mercantile partnership would not make it so. Thus, suppose A and B each owns a lot. They agree that A shall convey his lot to B by an absolute deed; that they will make a joint dwelling house on the two, and then B shall reconvey to A an undivided half. This agreement would clearly be within the statute. It would clearly not amount to a partnership. But suppose A and B had been at the time partners in law, or in medicine, or in trade, would that vary the effect of this agreement as to the lots? We cannot see how it could. The agreement concerning the real estate, as set up in the complaint, is entirely separate and distinct from the mercantile partnership. Each of the parties was to put in an equal amount of real estate, each to contribute equally in the improvement, and each to have an undivided one fourth reconveyed. It has, by its terms, no connection whatever with the trading partnership; and the general allegation that the latter was extended to this new arrangement, does not vary its legal effect.

Our conclusions may be thus stated: *An agreement for a partnership to consist in dealings in real estate, is within the statute of frauds, and void unless in writing.*

The fact that the parties making it are engaged at the time

in a mercantile partnership, does not take it out of the statute. The alleged new agreement in respect to the real estate does not in law constitute a partnership therein, and the existing mercantile partnership does not give it that effect.

The case, therefore, with respect to this real estate, stands upon the same footing as the Rasdall case, and is an attempt to show by parol an express trust in lands conveyed by deeds absolute on their face. We must hold such evidence inadmissible under the statute of frauds. The lot acquired for the store was clearly trust property. It would be so as incident to the mercantile business, within some authorities, but it is not necessary to rely on that doctrine here, for the original agreement expressly provided for its purchase. *Morrison* will, of course, be liable to account for the proceeds of that, it having passed to *Dean* through a *bona fide* purchaser without notice, and for any part of the partnership funds or property which he may have applied to the improvement of real estate to which he had the title, as well as for the shares of the others in the mercantile business, and the profits, &c.

It follows, therefore, that the decree must be affirmed so far as it adjudges the existence of the mercantile partnership, and an account between the parties therein; and that it must be reversed so far as it adjudges a partnership in real estate, other than the store lot, and an account of such partnership; and also all that part of the decree from which the defendant *Dean* has appealed, is reversed. The order for reference will remain, but the accounting will extend only to the mercantile partnership.

Dixon, C. J., did not sit in this case, having presided at the trial in the circuit court.