## Case No. 4,650.

### In re FARMER et al.

### Ex parte GRIFFIN.

[18 N. B. R. 207;[1] 10 Chi. Leg. News, 395.]

District Court, D. Massachusetts. Aug. 1, 1878.

G. W. Wiggin, for petitioner.

J. D. Ball, for assignee.

[1] [Reprinted from 18 N. B. R. 207, by permission.]

LOWELL, District Judge. It is a familiar principle that real estate which is the property of a firm must, in equity, be applied to the payment of the debts of the firm, however the legal title may stand. The right to require this application subsists in each partner, or in his representatives, until the joint affairs are settled, and is superior to the rights of the widow, or heirs, or separate creditors of the several partners. Assignees in bankruptcy of the partners, or any of them, are bound by this rule, which indeed is, to a certain extent, expressed in the bankrupt act [of 1867 (14 Stat. 517)]. The petitioner admits all this, but contends that, under the statute of frauds of this commonwealth, there is no competent evidence that the factory of the bankrupts was co-partnership property, excepting that small part of the land which was bought after this firm was formed. He cites two provisions of the statute: One, that no action shall be brought upon a contract for the sale of land, unless the contract, or some note or memorandum thereof, is in writing, may be laid out of the case, because no question arises here concerning any such contract. The other provision is, that no trust concerning lands, excepting such as may arise or result by implication of law, shall be created or declared, unless by an instrument in writing signed by the party creating or declaring the same, or by his attorney. Gen. St. c. 180, § 19.

Whether the statute of frauds has any application to partnership affairs, has been seriously doubted. In 1800, the lord chancellor, in a case much cited since, said that a partnership may be proved by any appropriate evidence, and, when proved, the premises necessary for the purposes of the partnership are, by operation of law, held for the purposes of that partnership. Forster v. Hale, 5 Ves. 308. Again, in another celebrated case, an eminent vice-chancellor established a trust for the benefit of a plaintiff against the heirs of one who had bought lands upon an oral agreement to share profit and loss with the plaintiff as a partner. Dale v. Hamilton, 5 Hare, 369. These decisions have been mentioned with approval, or followed in several cases in the United States. Fall River Whaling Co. v. Borden, 10 Cush. 458; Frederick v. Cooper, 3 Iowa, 171; York v. Clemens, 41 Iowa, 95; Essex v. Essex, 20 Beav. 442; Chester v. Dickerson, 54 N. Y. 1.

It is to be observed, however, that when there has been no actual partnership business carried on by the parties, so that there is no part performance, and the plaintiff is seeking to obtain an interest in lands simply by oral evidence of an agreement on the part of the only person (the defendant) who has bought and paid for the lands, or had aught to do with them, that he will share profit and loss with the plaintiff, the case differs from any other case of trust only in the language attributed to the parties in the supposed oral agreement about the lands themselves. The distinction between an agreement to hold as a partner, and one to hold as joint owner, is certainly somewhat nice. This particular point is considered by some late writers not to be, as yet, definitively established. They point out that Dale v. Hamilton was affirmed by the lord chancellor on a different ground (2 Phil. Ch. 266), and that its authority is shaken by Caddick v. Skidmore, 2 De Gex & J. 52.

Several important decisions in this country are opposed to Dale v. Hamilton. See Story, Partn. § 93, and Mr. Gray's note in 6th Ed.; Lindl. Partn. (3d. Ed.) 90, 91; Smith v. Burnham [supra]; Henderson v. Hudson, 1 Munf. 510; Bird v. Morrison, 12 Wis. 138. Smith v. Burnham, ubi supra, is an authority here. Unless the courts of the state have construed their statute differently from that decision, or unless this case can be distinguished from that, I am inclined to think that both points might be maintained. No simple question of trust arises here. Where, by distinct and unimpeached evidence a partnership has been proved to exist, and to have carried on business for months or years, the question whether certain real es-

tate standing in the name of one or more of the partners is partnership property, has not usually been treated as a question arising under the statute of frauds.

The evidence has all been examined with a view to discover the intention of the parties. No doubt in a large number of the cases the land has been bought with the joint funds, which might raise a resulting trust. And the petitioner argues that it is only in such cases that the principle has been applied. But the doctrine of resulting trusts is not adequate to explain those decisions. If partners buy land with the joint funds, and cause them to be conveyed to themselves in the same proportions in which they are interested in the capital, the presumption is quite as strong that they intended a division of capital, as that they had merely changed an investment.

Everything depends on the circumstances of each case, or the actual agreement of the parties, if · there was one, and Mr. Lindley says that no satisfactory distinction with reference to the question of conversion can be drawn between land bought with partnership moneys and land acquired in any other way, provided such land is in the proper sense of the expression an asset of the partnership (3d Ed. p. 690); and again: "Property which has been used and treated as partnership property cannot be presumed to belong to one partner simply because he paid for it, for the presumption in such a case is rather that the property in question was his contribution to the common stock" (page 665). In Bird v. Morrison, 12 Wis. 138, which agrees with the decision in Smith v. Burnham [supra], the learned judge who delivered the opinion of the court said: "Where the title is held by all the partners jointly, so as to be entirely consistent with the character of partnership property, the fact of partnership may be shown by parol, and that the property was held for partnership purposes, and from these facts the court will imply its partnership character, and such trusts as result therefrom." Per Paine, J., p. 155.

In the present case the bankrupts held this land as tenants in common; there is no such tenancy known in law or equity as co-partnership; but partners in equity hold as tenants in common. What occasion is there then for a declaration of trust? Though the partners may be called, in a certain sense, trustees or quasi trustees of the joint stock—that is, though they are bound to apply that stock to the payment of the joint debts, this agency or trust results or is implied from the connection between the parties, and is declared by the fact that they are partners.

The exact question is, whether one of the tenants in common has a lien on the share of his co-tenants for the payment of the joint debts and other dues arising out of the business; and the statute does not say that no lien shall arise or be operative between co-tenants unless declared in writing. See Lead. Cas. Eq. (5th Am. Ed.) 496. In this connection it is worthy of remark that the statute of frauds of this commonwealth in the next section to this, which I have already quoted, provides that no trust in lands, whether expressed in writing or implied by law, shall prevent a creditor having no notice of the trust from attaching or seizing the lands, as if there were no trust. Gen. St. c. 100, § 20. Now in several early cases, which were very carefully argued and considered, and in which the precise question of an equitable lien of this sort between partners who were tenants in common was decided in favor of the joint creditors, and against separate creditors who had levied, or who in bankruptcy stood like execution creditors, no notice was proved or even alluded to as having been given to the separate creditors, which shows that the counsel and the court were of opinion that the equity in question, though they sometimes speak of it as a trust, was not such in strictness of law, because if it were, then, whether it avoided the statute because it was a resulting or implied trust, or came within it as a direct trust, in either case it would not have availed against the separate creditors without notice to them. See Burnside v. Merrick, 4 Metc. [Mass.] 537; Dyer v. Clark, 5 Metc. [Mass.] 562; Howard v. Priest, Id. 582; Peck v. Fisher, 7 Cush. 386; Fall River Whaling Co. v. Borden, 10 Cush. 458. These cases were decided on general grounds of equity, taking for granted that the statute of frauds was out of the question.

However, I do not deem it essential to ascertain whether this equity is a trust concerning lands, because, if it is so, the facts disclose such a part performance as would, in equity, require the court to admit the oral evidence. The doctrine of part performance stands upon the fraud or hardship which would be operated by leaving the parties to an action at law for damage or the recovery of money, when their position has been so far changed that the judgment in such an action would furnish no adequate relief. See the terse statement of Grier, J., in Purcell v. Miner, 4 Wall. [71 U. S.] 513, 518. Where partners have gone on in business and contracted debts on the faith of a contribution of land by some of them, and of money by others, it would be the greatest hardship to leave the land liable to the separate debts of the several partners, and thus to leave the partner who furnished money to bear so much more than his just share of the deficiency.

This is very forcibly shown by Shaw, C. J., in his judgment in the leading case of Dyer v. Clark, 5 Metc. [Mass.] 562, and though that happened to be a case where the joint funds were used in the purchase, the argument is as well applicable to the point

of part performance. And when the land, as in this case, was used for the manufacture of the goods, there cannot be any question that notice to all the world would be presumed. It was on this ground of fraud or hardship that Judge Ware decided in favor of the joint creditors. In re Warren [Case No. 17,191]. He distinguished that case from Smith v. Burnham [supra], upon the rights of creditors as being beyond those of the partners. This is not a valid distinction. The rights of the creditors depend upon those of the partners, but the fundamental idea was sound. It would be a fraud, as he said, on the joint creditors, but it would be so because it would be one upon the partners themselves, which was not the case in Smith v. Burnham.

Whatever the argument may be, it is certain that the authorities are entirely decisive, that when there is an undoubted partnership, oral evidence may be received to prove what lands are the property of the partnership. I leave out all those very numerous cases in which the money of the partnership has been used in the purchase; although, as I have already observed, they cannot be fully explained on the theory of resulting trusts. See, in addition to cases above cited, Lake v. Craddock, 3 P. Wms. 158, and the note to that case in 1 Lead. Cas. Eq. (4th Am. Ed.) 265; Fereday v. Wightwick, 1 Russ. & M. 45; Hanff v. Howard, 3 Jones, Eq. 440; Meily v. Wood, 71 Pa. St. 488; 1 Am. Lead. Cas. (5th Ed.) 496; notes to Dyer v. Dyer; Jeffereys v. Small, 1 Vern. 217; Jackson v. Jackson, 9 Ves. 591; Crawshay v. Maule, 1 Swanst. Ch. 495.

One further remark may be added. The partners have never denied the trust, if trust it be. The assignee succeeds to their rights and duties, and if he finds property of theirs clothed with a trust which no one has ever disputed, it is by no means certain that the bankrupt law would forbid a declaration of the trust to be made after the beginning of the bankruptcy. It was held in one case in England, that a declaration of trust made by a bankrupt after he had committed an act of bankruptcy, that is to say, after the time to which his assignee's title would relate, corresponding to the petition in bankruptcy under our law, was valid if it could be clearly proved, though not by written evidence sufficient to satisfy the statute of frauds, that such a trust in fact existed. The reasoning was, that though a bankrupt cannot deal with his property or create new rights or obligations (excepting where he does it with innocent person having no notice), yet that a mere declaration to conform to the fact, and do actual justice, was not a dealing or conveyance which a court of equity could declare to be unauthorized. Gardner v. Rowe, 2 Sim. & S. 346.

I prefer to rest my decision upon the proposition that in a case of this kind oral evidence may be admitted to prove that the factory in which the partners carried on their business, and upon which they expended their money, was a part of the capital stock contributed by them, and that the oral evidence being clear and undisputed, and admitted to be true, the property in question is to be treated in bankruptcy as the property of the firm; if on no other ground, then clearly on that of part performance, and it must be applied accordingly.

Petition dismissed.