UPHAM and another vs. HEWITT and another, imp.

*Contract of Partnership.*

1. By the terms of a contract between A., B. and C. as parties of the first part, and X. and Y. as parties of the second part, the former covenanted with the latter to " commence immediately and work faithfully and con‑ stantly for " X. and Y. until the logs there mentioned should be market‑ ed; that they would take charge of the several logging camps of X. and Y., to be started at such points as the latter should direct, in a certain county, hire men to run the same, cut, haul, bank, and run to a certain place, all the pine logs they could get out during the then approaching fall and winter, and do all said work in a good and suitable manner, and for the best interests of all the parties to said contract. In consideration thereof, X. and Y. covenanted on their part to pay for all stumpage upon the logs so to be cut, for all hired help and all teams necessary for getting out such logs, and for all supplies and expenses necessary in cutting logs and getting them to market; and that when the logs were sold by them (X. and Y.), all the money so paid out by them should first be deduct‑ ed from the amount paid for the logs, and the balance, with all teams and supplies then remaining on hand, should be divided in equal portions between the two parties above named, and the portion or share belong‑

ing to A., B. and C. should be "full payment and compensation for the work and labor of said " A., B. and C. *Held*, that this agreement constituted all the parties thereto *partners*, and rendered X. and Y. liable for supplies furnished to A., B. and C., upon the order of the latter, for the use of the logging camps while engaged in getting out logs under said contract.

2. For supplies furnished to A., B. and C. for the use of their logging camps while engaged in getting out logs for other parties, and not under said contract, X. and Y. are not liable.

APPEAL from the Circuit Court for *Winnebago* County.

This action was brought in March, 1873, by *Upham* and *Russell*, partners in business, against *Hewitt, Jr.*, *Hyde*, Hedges, Garfield and Warwick, who are alleged to have been, for more than two years before the commencement of the action, partners in the logging and lumbering business, for an indebtedness of said last named partnership in the sum of $2,000, for goods sold and delivered to them by the plaintiffs between October 17, 1871, and January 1, 1873, at the village of Shawano, in the county of the same name. *Hyde* and *Hewitt* answered by a general denial, and an averment that they were *never copartners* with the other defendants; and they attached to their answer proper affidavits denying the partnership.

Upon a trial before a referee, the plaintiffs introduced in evidence, against objection, a contract under seal entered into on the 17th of October, 1871, between Hedges, Garfield and Warwick as parties of the first part, and *Hewitt* and *Hyde* as parties of the second part. By the terms of this contract, Hedges, Garfield and Warwick covenant "that they will commence immediately and work faithfully and constantly for said *Hyde* and *Hewitt* until the logs hereinafter mentioned shall be marketed in Oshkosh, in the summer of 1872, as follows, to wit: They are to take charge of the several logging camps of the said *Hyde* and *Hewitt*, to be started at such points as *Hyde* and *Hewitt* shall, direct, in the county of Shawano; hire men to run the same; cut, haul, bank, and run

to Oshkosh, all the pine logs they can get out during the coming fall and winter; and do all said work in a good and suitable manner, and for the best interests of all the parties hereto." In consideration of the foregoing covenants, *Hyde* and *Hewitt* covenant on their part, "that they will pay for all stumpage upon any and all pine logs so to be cut by the said parties of the first part, pay for all hired help and for all teams necessary for getting out said logs and running the same, and all supplies and expenses necessary in cutting, hauling, banking, rafting, running, moving, and towing the said logs; and when the said logs are sold at Oshkosh, or at the Wood river boom, by said *Hyde* and *Hewitt*, all the moneys paid out and expended by the said *Hyde* and *Hewitt* as aforesaid, shall be first deducted therefrom, and the balance, and all teams and supplies remaining after the sale of said logs, shall be divided between the parties hereto in equal portions — that is, one portion or share to the party of the first part, and one portion to the parties of the second part, which one portion or share shall be full payment and compensation for the work and labor of said parties of the first part as aforesaid."

The evidence for the plaintiffs tended to show that in the winter of 1871-2, Garfield, Hedges and Warwick carried on lumbering operations in pursuance of the foregoing contract; that they obtained from the plaintiffs supplies and cash for carrying on these operations, paying the men and running the logs, until the fall of 1872; that during the same period they drove logs for one McCord to the amount of 1,500,000 feet or more; that the supplies furnished by plaintiffs were used in running these last named logs, as well as in getting out and running logs under the above contract; that their orders on the plaintiffs were signed "Garfield & Hedges;" that the account in plaintiffs' books, from which the bill of particulars in this action was taken, was in form an account with "Garfield & Hedges;" that plaintiffs had seen the contract above recited, before they commenced furnishing the

supplies; that at several different dates between October 24, 1871, and February 6, 1872, Garfield & Hedges had given them drafts on *Hyde* to balance the account to those dates respectively, which drafts were paid; and that on the 9th of March, 1872, *Hyde*, in person, paid at their office $1,700 in currency upon said account.

For the defendants, Hedges testified that he took the McCord logs to run for Garfield & Hedges, and that *Hyde* and *Hewitt* "had nothing to do with the running of those logs, that he knew of." The defendant *Hewitt* testified: " Garfield and Hedges told me, when the logs were rafted out, that I was to sell them to somebody; they told me to sell them to the highest bidder and pay the bills, and, if there was anything over, to pay *Upham & Russell*. I know there was nothing due Garfield and Hedges and Warwick at the times the logs were sold, on account of this contract." This last statement was received against plaintiffs' objection. On cross-examination, the witness said: "When the logs were sold, we took the notes of the parties who bought the logs, and divided them; and those notes I took and applied on moneys I had paid out, so far as they would go. The logs did not come to enough, within seven hundred dollars, to pay the advances."

It appears that in May, 1872, Hedges and Garfield executed and delivered to *Hyde* and *Hewitt* a bill of sale of the logs cut under said contract, and certain other chattels, as follows: " Oshkosh, May 20, 1872. For and in consideration of eleven hundred dollars, five hundred cash in hand, and authority to draw for six hundred dollars, and all other supplies which we have received, we do hereby sell and assign and hereby transfer to *Henry Hewitt, Jr.*, and *Welcome Hyde* all the following described logs now lying in the Embarrass river [describing them]; in fact meaning to convey all our right, title and interest in any of the logs in the Embarrass river, cut and purchased for said *Hyde* and *Hewitt;* also all horse teams,

three yoke of cattle, six lumber sleighs, all camp equipage and tools, and chains, and blankets, and implements of any description, bought with the money advanced by said *Hyde* and *Hewitt*."

The referee found the following among other facts: 2. That defendants, on the 17th of October, 1871, entered into a contract by which they became *partners* in the logging and lumbering business. 3. That by said contract, *Hyde* and *Hewitt* agreed to pay for all men and supplies necessary to carry on said logging business. 4. That plaintiffs sold and delivered to defendants Garfield & Hedges supplies used in said logging business, and paid men who worked on said logs, to the amount of $3,953.17. 5. That defendants Garfield & Hedges took about 1,500,000 feet of logs to run for other parties; and that the supplies furnished by plaintiffs were used as well in running these logs as those of defendants. 6. That there had been paid to plaintiffs, on account of such supplies and money furnished, $1,774.10. 8. That there was then due plaintiffs from defendants $2,079.07, with interest from March 13, 1873, amounting in all to $2,453. As conclusions of law, the referee held, 1. That by the above described contract between them, the defendants became partners. 2. That plaintiffs were entitled to judgment against defendants for $2,453. *Hewitt* and *Hyde* excepted to all the above findings of fact except the fifth, and also to the conclusions of law. Plaintiffs moved to confirm the report of the referee, and for judgment thereon. At the hearing, the parties stipulated in open court, " that if a deduction from the amount found due by the referee should be made, $600 was a ratable deduction to be made on account of the logs mentioned in the fifth finding of the referee." The court ordered that the report and findings be modified by deducting $600 from the amount found due by the referee; that the report so modified be confirmed; and that plaintiffs have judgment against all the defendants for $1,744.50, and costs; and judgment was entered accordingly.

Plaintiffs filed exceptions to the modification of the referee's report; and both plaintiffs and the defendants *Hyde* and *Hewitt* appealed from the judgment.

For the defendants *Hyde* and *Hewitt*, a brief was filed by *Moses Hooper* and *D. J. Parkinson*, and the cause was argued orally by *Mr. Hooper*. They argued, 1. That the contract did not make *Hyde* and *Hewitt* partners with the other defendants, *inter sese*. The contract gives each party a share in the profits, if any, as compensation for capital or services, which does not make a partnership. *Dwinel v. Stone*, 30 Me., 384; *Hazard v. Hazard*, 1 Story, 371; *Rice v. Austin*, 17 Mass., 205; *Loomis v. Marshall*, 12 Conn., 69; *Denny v. Cabot*, 6 Met., 82; *Judson v. Adams*, 8 Cush., 556; 5 Pick., 177; *Ruddick v. Otis*, 33 Iowa, 402; *Christian v. Crocker*, 25 Ark., 327; *Lintner v. Milliken*, 47 Ill., 178; Collyer on Part., §§ 32–35. This was one venture, and not a series of ventures in which profits might be accumulated which should stand as security for subsequent debts. *Loomis v. Marshall* and *Judson v. Adams, supra; Ford v. Smith*, 27 Wis., 261; *Braley v. Goddard*, 49 Me., 115; *Hawkins v. McIntyre*, 45 Vt., 496. There was to be no division of profits here until after all debts were incurred and paid, so that nobody could give any credit on account of profits earned in business. An essential element in copartnership is a control by each partner of the whole property, that is, a power of sale by each partner. *Braley v. Goddard* and *Dwinel v. Stone, supra; Woodward v. Cowing*, 41 Me., 9; *Knowlton v. Reed*, 38 id., 246–254; 3 Kent's Com., 20, 22, 116, 117; Story on Part., 449, §§ 89, 90. But here the title to the property was in *Hyde* and *Hewitt*, and the logs were to be sold only by them, as appears in the contract. This view is not contradicted by the bill of sale, which was simply a release of the claims of Garfield and Hedges to the profits, and was evidently so understood. 2. That the contract and the dealings under it did not make *Hyde* and *Hewitt* partners *as to the plaintiffs;* for the latter

gave the former no credit. They trusted Garfield & Hedges. And they knew the terms of this contract before they extended any credit. 3. That the only cause of action stated in the complaint against *Hyde* and *Hewitt* is, that they were copartners with the other defendants; that the contract put in evidence was not admissible to establish any other cause of action; and that the rule is still good, that a recovery must be according to the allegations and proofs. *Eilert v. Oshkosh*, 14 Wis., 586, 590; *Young v. Lego*, 36 id., 397; *Johnson v. Filkington*, 39 id., 62, 66. 4. That if the complaint could be construed as stating a cause of action upon a contract by *Hyde* and *Hewitt* to pay for goods sold by plaintiffs to the other defendants, still plaintiffs could not recover. (1) It is logically held in many cases that no person can recover on a promise, except the person to whom it is made. *Lawrence v. Fox*, 20 N. Y., 275, dissenting opinion of COMSTOCK, J., and cases there cited; *Clapp v. Lawton*, 31 Conn., 103; *Treat v. Stanton*, 14 id., 451. (2) The case does not come within that class of cases which hold that one may sue on a promise made for his benefit to a third person. (a) *Hyde* and *Hewitt* did not, by the contract, promise to pay *to the plaintiffs*. When they promised to pay *for* all hired help, they did not promise to pay *to* each man hired to perform any work in the camp; so when they promised to pay *for* supplies, there was no promise to pay *to* each person of whom supplies were obtained. *Carnegie v. Morrison*, 2 Met., 381; *Cleaves v. Stockwell*, 33 Me., 341; *Seaman v. Whitney*, 24 Wend., 260; *Weston v. Baker*, 12 Johns., 281; *Barker v. Bucklin*, 2 Denio, 47; *Eichelberger v. Murdock*, 10 Md., 373. (b) Garfield, Hedges and Warwick certainly had a right of action for the money here sued for. These supplies were furnished by them, and charged to them. Could *Hyde* and *Hewitt* be subject to suit by both the plaintiffs and their codefendants at the same time? *Putney v. Farnham*, 27 Wis., 190. (c) Plaintiffs were at least bound to show that *Hyde* and *Hewitt* had in

their hands a fund out of which they ought to pay this claim. This they did not show; but on the contrary the proof was that *Hyde* and *Hewitt* had fulfilled their contract with the other defendants. *Mellen v. Whipple*, 1 Gray, 317; *Lawrence v. Fox, supra; Crow v. Rogers*, 1 Strange, 592; *Brewer v. Dyer*, 7 Cush., 340. (d) Such promises have no negotiable quality, and cannot be transferred from party to party. *Seaman v. Whitney, supra.* To sustain this action, the promise must be construed as a floating one, resting wherever Garfield, Hedges and Warwick got credit, or with any one paying these bills. 4. That if plaintiffs ever had a right of action on the promise of *Hyde* and *Hewitt* to Garfield, Hedges and Warwick, their suit herein against the last named promisees is a bar to their action against *Hyde* and *Hewitt*. *Ramsdale v. Horton*, 3 Pa. St., 330. 5. That the promise was to pay for such supplies, etc., as were "*necessary* in cutting, etc., the said logs;" and there was no proof that the supplies here sued for were necessary for that purpose, while there was proof that a part of the supplies charged were not necessary for that purpose, but were used (and that with plaintiffs' knowledge) for running *other* logs to market; that if the other defendants were copartners with *Hyde* and *Hewitt*, it was only in respect to logs cut under the contract; that if, on the other hand, they were *Hyde* and *Hewitt's* agents, they were such only as to getting out the same logs; and that the evidence as to supplies used in running to market the McCord logs was admissible under the general denial.

For the plaintiffs, a brief was filed by *Felker & Weisbrod*, and the cause was argued orally by *Charles W. Felker*. They contended, 1. That the contract in evidence showed that the parties thereto were not only to share in the profits arising from a sale of the logs, but were also to share equally in certain other partnership property, viz., "teams and supplies;" that the bill of sale taken by *Hyde & Hewitt*, of the interest of Hedges and Garfield in the logs, teams, sleighs, etc., show

that Hedges and Garfield were regarded as having an interest in the property, and not as mere hired men; and that, as all the defendants had united to carry on the business for their mutual profit, one party contributing the capital and the other party the labor and skill, under a contract which entitled them to a communion of profits, a community of interest in the property, and the right to an account, they were partners, not only as to third persons, but also *inter sese*.   2. That a stipulation to share net profits is in law and fact a stipulation to share losses (20 Wis., 117; 7 Ohio St., 172; Story on Part., §§ 20, 21, 56); and that the provisions of the contract between the defendants for a division of net profits rendered them partners at least as to third persons.   *Grace v. Smith*, 2 W. Black., 998; *Waugh v. Carver*, 1 Smith's L. C., 968, notes; *Hickman v. Cox*, 18 C. B., 617; *Whitney v. Ludington*, 17 Wis., 140; *Gilbank v. Stephenson*, 31 id., 592; *Hesketh v. Blanchard*, 4 East, 144; *Dob v. Halsey*, 16 Johns., 34–40; *Walden v. Sherburne*, 15 id., 409; *Champion v. Bostwick*, 18 Wend., 175; *Manhattan Brass Co. v. Sears*, 45 N. Y., 797; *Leggett v. Hyde*, 58 id., 272; *Catskill Bank v. Gray*, 14 Barb., 471; *Everett v. Coe*, 5 Denio, 180; *Cushman v. Bailey*, 1 Hill, 526; *Bucknam v. Barnum*, 15 Conn., 72; *Purviance v. McClintee*, 6 S. & R., 259; *Brigham v. Clark*, 100 Mass., 430; *Cox v. Delano*, 3 Dev. Law, 89; *Ward v. Thompson*, 22 How. (U. S.), 330; *Wood v. Vallette*, 7 Ohio St., 172; 3 Kent's Com. (Comstock's ed.), 20, 25; Story on Part., §§ 56–62. 3. That if *Hyde* and *Hewitt* were not liable as copartners with the other defendants, then they were liable on the ground that Hedges and Garfield were their *agents* in the transaction of this business with plaintiffs; and that the contract between the defendants was an open letter of credit on the part of *Hyde* and *Hewitt*, valid in the hands of whoever furnished the means to Garfield and Hedges to carry on this enterprise.   *Union Bank v. Coster's Ex'rs*, 3 N. Y., 203, 214. 4. That the circuit court erred in modifying the referee's

report and deducting the amount of supplies used in running the McCord logs. If this matter was a defense, it should have been pleaded. If defendants were partners, it is no defense. If Garfield and Hedges were merely agents or servants of *Hyde* and *Hewitt*, the misapplication by the servant of moneys or goods furnished for the benefit of the master, is no defense to an action against the master; and it is not pretended that plaintiffs had any knowledge that the supplies were intended for any other purpose than that named in the contract between the defendants.

COLE, J.   We are inclined to hold that the agreement dated 17th of October, 1871, which was offered in evidence, constituted the parties to it partners *inter sese* in the logging adventure.   There are doubtless expressions in the contract which militate against this construction; but, looking at the whole instrument, we think this the better and more reasonable interpretation to place upon it.   The learned counsel for *Hyde* and *Hewitt* insists that the contract does not make his clients partners with the other defendants, but only gives each party a share of the profits, if any, as compensation for capital or services, which, he says, does not necessarily constitute a partnership.   And he suggests various considerations and inferences drawn from the agreement, in support of that view.   But there are several clauses which negative this construction.   Hedges, Garfield and Warwick agreed to take charge of the logging camps of *Hyde* and *Hewitt*, to be started at such points in Shawano county as the latter should direct; hire men to run the same; cut, haul, bank, and run to Oshkosh, all the pine logs they could get out during the coming fall and winter, and "do all said work in a good and suitable manner, and for the best interests of all the parties hereto."   *Hyde* and *Hewitt* agreed to pay the stumpage upon all the logs so cut; pay for all hired help, teams and supplies necessary for getting out, running and booming the logs; and

they also retained the right to sell the same. When the logs were sold, all the money paid out and expended by *Hyde* and *Hewitt* was to be first deducted from the proceeds of the sale, and "the balance, and all teams and supplies remaining, * * shall be divided between the parties hereto in equal portions, that is, one portion or share to the parties of the first part, and one portion to the party of the second part." It was a case where labor and skill were contributed to the business on one side, and capital on the other. There was necessarily a communion of profit and loss; for, if there were no profits or the business proved a losing one, Hedges, Garfield and Warwick would lose their labor expended in getting out and marketing the logs, while *Hyde* and *Hewitt* would lose on their advances or capital. But the profits of the business, that is, the excess in the value of the returns over the advances, and all teams and supplies, were to be divided between them. The parties were therefore interested in the profits themselves, as profits. It is true, for their security for advances made, *Hyde* and *Hewitt* reserved the right to themselves to sell the logs, as was done by Ludington in *Whitney v. Ludington*, 17 Wis., 141. But this stipulation might well be made, and still the parties intend to create, and in fact create, a partnership in the business. So, while the stipulation was that the logs were to be sold only by *Hyde* and *Hewitt*, it is plain, we think, that the title to the property was not in them alone, but in all the partners. And if the logs had been injured or destroyed while being run to market, an action 'for damages against the wrongdoer would necessarily have been brought in the name of all the partners in interest.

The agreement in this case may not be essentially different from the contract before the court in *Braley v. Goddard*, 49 Me., 115, which was held not to constitute a partnership between the parties. There the plaintiff had not the unqualified right to dispose of that portion of the lumber belonging to him by the contract, after all prior claims were discharged, ·

and no authority to dispose of any further portion on any terms whatever. The court say such a stipulation was entirely inconsistent with the rights of a member of a copartnership, who has the power to make contracts, incur liabilities, manage the whole business, and dispose of the whole property of the partnership for its purposes, in the same manner and with the same power as all the partners could, acting together. There is no doubt that ordinarily each partner possesses full power and authority to dispose of the partnership property for partnership purposes, unless restricted by the articles of agreement. But, "whenever there are written articles or particular stipulations between the partners, these will regulate their respective powers and authorities *inter sese*, although not, if unknown, in their dealings with third persons." Story on Part., § 101. The power reserved by *Hyde* and *Hewitt* to dispose of the logs does not have the effect to destroy the legal character of the instrument as we have construed it. Indeed, the case seems strictly analogous to that of *Whitney v. Ludington, supra*. It follows from these views that *Hyde* and *Hewitt* are liable with their codefendants for the goods sold and supplies furnished by the plaintiffs for the partnership business.

On the other appeal, we think the court was right in deducting from the plaintiffs' bill the amount of supplies furnished to run the McCord logs. That was a matter entirely outside the scope of the partnership business. The goods were not charged to the partnership, nor does it appear that they were sold on the faith and credit of the partnership agreement, which the plaintiffs had examined. *Hyde* and *Hewitt* had not agreed to pay for supplies furnished to run any logs except those got out under the contract. They had nothing whatever to do with the McCord logs; and we fail to perceive upon what principle it can be successfully claimed that they are liable to pay for supplies furnished for running them.

*By the Court.* — Those portions of the judgment appealed from in each case are affirmed.