RICE and another vs. ROBERTS.

*Statute of Frauds — Agreement to pay for party wall — Revocation of license.*

1. An oral agreement between A. and B., the respective owners of two
adjoining lots, that B. should not build his front wall flush with the
street, *held*, within the statute of frauds, and void.

2. In case of an oral agreement between two such owners, that A. should
erect a party wall on both sides of the line between them, and B.
should pay one-half of the expense, if the wall is built before any
revocation, an action may be maintained on the agreement.

3. But if B. sells his lot and gives notice of the sale to A. before such wall
is commenced, this is equivalent to a revocation of the license; and B.
will not be liable if the wall is subsequently erected.

APPEAL from the Circuit Court for *Waupaca* County.
This action was brought to recover one-half the price
of a wall built on each side of a line between a lot
belonging to the plaintiffs and an adjoining lot which
belonged at one time to the defendant, it being alleged
that defendant had agreed that the wall should be so
built as a party wall, and that he would pay one-half
the cost thereof; and also to recover damages for a
breach of an alleged agreement by defendant, that any
building erected by him on his said lot should not pro-
ject farther toward the street in front thereof than the
building erected by plaintiffs. The facts proven were
substantially as follows: In January, 1868, one Larson
owned lot 4 in a certain block in the village of Waupaca,
and the plaintiffs, under the firm name of Orin Rice & Co.,
owned the adjoining lot on the north side, and said
Larson entered into a written contract with the plaintiff
*Orin Rice* (who acted for said *Orin Rice & Co.*), and one

Green, whereby said *Rice* and Green were to build for Larson, on the north nineteen feet of his lot, a stone building, of which "the wall, on the north side," was to be "a joint wall with the south wall of the store to be built by *Orin Rice & Co.* on the adjoining lot." To the performance of each and all of the conditions of this contract, the parties bound themselves "in the penal sum of $400 as fixed and settled damages, to be paid by the failing party." Before this contract was performed in any part, the defendant had some negotiations with Larson in regard to purchasing said lot 4; and some time in April, the plaintiffs (Green also being present) made an oral agreement with defendant, of which *Orin Rice* testifies as follows: "Defendant was to give me $150 at any time during the building of the wall, and one-half of the cost of the wall whenever it was *used*, and to set his building, when he should build, three feet back from the street, to correspond with the front of my building; and he was to bind his heirs and assigns to the same. In consideration of which, I agreed to release the Larson contract. * * * At the time this contract was made with defendant, I understood from him that he intended purchasing the Larson lot, and this was such an agreement as he could make with me. * * * It was agreed between us to put the agreement in writing at the earliest opportunity. In a day or two I went to Milwaukee; and when I returned, the land had passed from him to Strickland, without any reservations. I saw him about it, and he said he had forgotten to make the reservation. This was before I began the erection of the wall. We released Larson from his contract. Strickland paid me $150 toward the building of the wall, when it was nearly erected. * * * I began the wall after the agreement with defendant. He said I could build the wall according to the Larson contract, or wider if I saw fit, putting one-half on his side of the line; and in pursuance of the agreement I

went on and built the wall. Since that time a wooden building has been constructed on the Larson lot, with a balloon frame, the studding leaning against my wall; boarded, lathed and plastered on the inside, with nothing on the outside but my wall; the roof is attached to my building by felt and tar, and made water tight; and the front extends on to the street three feet beyond my building.'' Green testified to substantially the same facts; and that he had released his interest in the Larson contract to the plaintiffs. Larson, for the plaintiffs, testified that plaintiffs released him from his contract with them. '' I sold to defendant, he to fill that contract for me. Before selling to him, I told him that I had let the contract for the building. I did not know any thing of the agreement between him and *Rice*. I understood defendant was to take the contract off my hands. I got that understanding from him, and sold to him on that condition.'' There was also evidence of the damage to plaintiffs from the projection of Strickland's building beyond the front of theirs.

The court nonsuited the plaintiffs; and they appealed.

*E. L. Browne* and *Myron Reed*, for appellants:

1. There was such a performance of the contract that it would operate as a fraud upon plaintiffs if defendant were permitted to repudiate it. *Blanchard v. McDougal*, 6 Wis. 167; *Fisher v. Moolick*, 13 id. 321; *Daniels v. Lewis*, 16 id. 140; *Paine v. Wilcox*, id. 202, 214, 217; *Martineau v. May*, 18 id. 54; 12 N. Y. 370; 4 Coms. 403; 41 Barb. 619; 2 Story's Eq. Jur. § 761. 2. The agreement that the contract should be reduced to writing at the first opportunity, and defendant's subsequent sale to Strickland and refusal to put the contract in writing, was, of itself, such a fraud as to preclude the defense of the statute. 2 Story's Eq. Jur. § 768; *Paine v. Wilcox*, 16 Wis. 217; 10 N. Y. 232. 3. Defendant bought the lot subject to the written contract between Larson and plaintiffs, and, on failure to perform it, is liable to plaintiffs the same as Larson

would have been had he not been released.    4. The
agreement to pay for the party wall is not affected by
the statute of frauds, and is valid.    13 Barb. 493.    5. It
cannot be seriously held that plaintiffs, in building the
wall, were trespassers.    But if they had any right to
build it, that right was derived from their agreement
with defendant; and in that case, defendant is bound
by the agreement to pay for the wall.

*M. H. Sessions*, to the point that the alleged contract
between plaintiffs and defendant was void by the statute
of frauds, cited *Dodge v. Hopkins*, 14 Wis. 630, 639;
*Mumford v. Whitney*, 15 Wend. 380; 5 Barb. 379; 25
id. 433; *Hibbard v. Whitney*, 13 Vt. 21; *Tryon v.
Mooney*, 9 Johns. 358; *Van Alstine v. Wimple*, 5 Cow.
162; *Lathrop v. Hoyt*, 7 Barb. 59; *Rice v. Peet*, 15
Johns. 503; *Sears v. Brink*, 3 id. 210; *Jackson v. Post*,
15 Wend. 588; *Folsom v. Great Falls Manf. Co.*, 9
N. H. 355; *Starin v. Newcomb*, 13 Wis. 519; *Brandeis
v. Neustadtl*, id. 142; *Wolfe v. Frost*, 4 Sandf. Ch. 72;
*Duinneen v. Rich*, 22 id. 550.

Dixon, C. J.    The claim of the plaintiffs, upon which
this action is brought, is divided into two branches; the
one, the price agreed to be paid for one-half of the party
wall when used; and the other, the damage claimed by
the plaintiffs for the erection of the building by Strick-
land beyond the line of the plaintiffs' building, and up
to the line of the street in front of the same.

We will consider the last branch first, namely, the
claim for damage; and upon that we have but little to
say.    The contract was a verbal one, no writing what-
ever having been made or signed by the parties.    The
right claimed by the plaintiffs under it, to control or
dictate as to the use which should be made of the
adjoining lot, or the manner in which the owner should
build upon or occupy it, was obviously an interest in,
or power over, land.    By the statute of frauds, every
such interest in, or power over, the land of another

must be granted or created by writing, subscribed by the party granting or creating the same, or it is void. R. S. ch. 106, §§ 6, 8.   This contract, being clearly within. the statute, is therefore void, and no action can be maintained upon it in this respect.   Upon this question we refer to the case of *Wolfe v. Frost*, 4 Sandf. Ch. 72, cited by counsel for the defendant; for it is seldom that an authority so exactly in point can be found.   The opinion of the assistant vice-chancellor is an able one, and very satisfactorily disposes of this question.

The other branch of the plaintiffs' claim, though resisted on the same ground, may not be within the statute of frauds.   If the defendant had continued the owner of the lot, and had himself erected the building, and used the party wall, no reason is perceived why the plaintiffs might not have recovered the price agreed upon for building the defendant's half of it.   It would then have been a contract executed on the part of the plaintiffs, and so not within the statute; and the defendant, having received the benefit of the work performed, and materials furnished, would have been obliged to pay the price according to his promise.   But, inasmuch as the defendant had sold and conveyed the lot before the plaintiffs built the wall, and as the plaintiffs were immediately informed of the sale and conveyance, and built the wall knowing that the defendant had no interest in it, and would derive no benefit from it, the question arises, whether they can now insist upon his paying for it.   It does not appear that the defendant was guilty of any bad faith in the transactions, or that the plaintiffs had not ample time and opportunity to have fully protected themselves from any loss or damage in this respect, either by contracting with Strickland, the defendant's grantee, or by refusing to build one-half the wall on Strickland's lot.   But since the contract was not at that time obligatory upon the defendant, the plaintiffs not then having executed it, or entered upon the work, it seems to us that the plaintiffs ought

not, under the circumstances, to be permitted to avail themselves of its subsequent execution for the purpose of charging the defendant with the expense. The sale and conveyance of the land by the defendant, with notice thereof to the plaintiffs, were equivalent to a revocation, on the part of the defendant, of the contract or license to go on and build the wall, which he had the right to revoke; and the building of the wall thereafter by the plaintiffs, with intent to charge the defendant with the price, seems to savor somewhat, to say the least of it, of want of due care and diligence on their part in the performance of their duty toward the defendant. We do not think, therefore, that there should be any recovery upon this branch of their claims, and are, consequently, of opinion, that the judgment of the circuit court was correct, and should be affirmed.

*By the Court.* — Judgment affirmed.