SEYMOUR and others, Appellants, vs. CUSHWAY and others, Respondents.

*September 22 — October 11, 1898.*

*Statute of frauds: Partnership to purchase standing timber: Breach: Fraud: Equity: Trusts: Sufficiency of writing: Remedy at law.*

1. An agreement to form a partnership to purchase lands is within the statute of frauds and void unless in writing.

2. Fraud is not established by the mere breach of an oral contract, void under the statute of frauds, to enter into a partnership for the purchase of standing timber.

3. Plaintiffs and the defendants C. and H. entered into an oral agreement of copartnership, or to form a partnership, the main purpose of which was the purchase of certain standing timber. Before any interest in the timber had been acquired, and before plaintiffs had done anything in the way of performing the agreement, said defendants repudiated it and entered into partnership with the defendant S. to purchase the same timber, and the purchase was made by them without any fraud, concealment, or misrepresentation. The plaintiffs paid no part of the consideration for the timber, and contrib-

uted nothing either of time, labor, or money, to the business of the firm which made the purchase, and had not, in any way, altered their position on the faith of any promise made to them by any of the defendants. *Held*, that plaintiffs had no interest in the timber, legal or equitable, no trust in their favor arising from the facts.

4. Prior to the making of the oral agreement with plaintiffs, the defendants C. and H. had made a written agreement between themselves, reciting the contemplated purchase of timber and stating that C. was to conduct the negotiations with the owners and was to receive one fourth of the profits, and H. and those associated with him were to furnish the necessary capital and were to receive three fourths of the profits. *Held*, that this was not a sufficient writing to satisfy the requirements of the statute of frauds in respect to the agreement with plaintiffs, because they were not parties to it, and because it did not contain the essential terms of that agreement.

5. The doctrine that equity will not allow the statute of frauds to be made an instrument of fraud has no application to such a case.

6. For the breach of the oral agreement of partnership to which plaintiffs were parties, their remedy, if any, is at law, not in equity.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

This is an equitable action to have a trust declared in certain standing timber, the legal title to which had been conveyed to defendants, and in the profits derived by them from the business of manufacturing it into lumber. The complaint alleged, in substance, among other things, that an oral agreement was made between the plaintiffs *Richard A. Seymour, John Seymour,* and *Antoine E. Cartier,* and the defendants *Joseph H. Cushway* and one *Fred Herrick* to form a partnership to purchase said timber and manufacture it; that the defendants fraudulently colluded to break the agreement and prevent its consummation and subsequently purchase the timber for themselves, and were then engaged in cutting it into lumber, from which they derived large profits; and that the timber rights so acquired by them were very valuable, and would continue to yield large returns.

The defendant *Cushway,* a half-breed Indian of little or no

pecuniary responsibility, parted with his interest before the business was started, and so did not appear in the action. The defendants *Herrick* and *Stearns*, answering separately, denied the charges of fraud and collusion, and in substance denied that the plaintiffs ever acquired any rights in the timber in question. They also insisted that the complaint did not state any grounds for relief in equity, but that the only remedy the plaintiffs had was an action at law; and at the commencement of the trial objected to any evidence being given under the complaint upon the ground that it did not state facts sufficient to constitute a cause of action, but the objection was overruled.

It appears that the subject matter of the controversy was timber on the Lac du Flambeau Indian reservation, a large tract of land, about 70,000 acres in the northern part of the state, set apart by the government for the use of the Chippewa Indians. They had no power to sell, or contract for the sale of, this land, except by permission of the government, and subject to such restrictions as it should prescribe. This was recognized by all the parties at every stage of the negotiations. It was understood by all that no rights whatever could be acquired in such timber except upon such terms and conditions as should be prescribed by the President.

The court found, among other matters, that the defendants *Herrick* and *Cushway*, in the summer of 1892, undertook to obtain the title to certain of the timber upon said reservation, and made a proposition to the Indians to buy it at specified prices. The Indians were about to petition the commissioner of Indian affairs for permission to accept the proposal, when, at the suggestion of the farmer upon the reservation, the petition was withheld until *Cushway* and *Herrick* could furnish evidence of their responsibility. *Herrick* went to Ludington, and verbally proposed to plaintiffs to enter into partnership with him and *Cushway* to purchase the timber upon the reservation, and to manufacture it into

lumber, specifying the interest which each should have. One of the plaintiffs went with *Herrick* to the reservation, and, after looking over the ground, verbally accepted the offer. It was then represented to the Indians and to the farmer that the plaintiffs had joined with *Herrick* and *Cushway* in the proposed undertaking, and, their references being satisfactory, the petition of the Indians which had been started was completed and delivered to the defendant *Herrick*. The parties then proceeded to treat with the government, and the approval of the scheme by the Indian agent at Ashland was obtained upon representations by the defendant *Herrick* that the plaintiffs were or would be members of the firm which was to purchase the timber. *Herrick* employed an attorney, and went with him to Washington, taking said petition of the Indians for authority to sell, indorsed with the approval of the Indian agent. At Washington they prepared and presented to the commissioner of Indian affairs a formal proposal to buy and manufacture into lumber all the timber upon the allotted lands of the reservation. This was signed by J. H. Cushway & Co., by *Fred Herrick*.

The defendants *Cushway* and *Herrick* had signed an agreement reciting the contemplated arrangements with the La Pointe Agency of Indians of Lac du Flambeau, in which it was stated that *Cushway* was to act in the capacity of agent in dealing with the Indians, and *Herrick* and those associated with him were to furnish the necessary capital for buying timber and manufacturing lumber and shingles; that it was agreed that *Cushway* should devote his entire time and attention to procuring of timber, dealing with Indians, and as interpreter, and perform such other duties as were necessary for the advantage of all parties in such enterprise; and he was to have "for such services the one-fourth of the net profits of such undertaking, and said *Fred Herrick* the three-fourths of the net profits, to be shared between him and his associates in such undertaking." *Herrick* laid the situation

before the plaintiffs, offered them an interest in the business proposed, and induced them to go with him to the reservation, prepared to carry through the negotiations if satisfied with the conditions there.   His offer was accepted, and a *verbal* contract of copartnership under the firm name of J. H. Cushway & Co. was there concluded between the plaintiffs and the defendants *Cushway* and *Herrick* to carry out the undertaking, by which the plaintiffs *Seymour Bros.* were to furnish one third of the capital, *Cartier* one third, and *Herrick* one third.   Profits were to be divided into four parts, one fourth going to *Cushway*, one to *Herrick*, one to *Cartier*, and one to *Seymour Bros.*   Upon the showing made by the plaintiffs of their financial and business standing, and the assurance that the plaintiffs were members of the firm, the petition signed by the Indians, indorsed by the farmer, and approved by the Indian agent at the La Pointe agency, was obtained, and also leases of land sufficient for the plant.   The petition and proposition were taken by *Herrick* to Washington, and submitted to the Indian commissioner, and at his suggestion the proposition was amended and enlarged by a new one, signed "J. H. Cushway & Co., by *Fred Herrick*," which proposed to purchase from lands then allotted, and thereafter to be allotted, all the merchantable pine, hemlock, birch, and Norway timber on the reservation at certain prices, and to give bond for the faithful performance of the undertaking.   This was favorably reported by the commissioner to the Secretary of the Interior, together with rules and regulations to govern the sale and manufacture of the timber, all of which were sanctioned by the Secretary, and reported to the President; and on the 28th of September, 1892, the President authorized the sale of all timber on allotted lands, and the dead timber on the unallotted lands, to J. H. Cushway & Co., and its manufacture under said rules and regulations.

It appears that *Herrick* reported to the plaintiffs the prog-

ress of the matter through the departments, and the receipt by *Herrick* of some papers from Washington after the President's authority was obtained, which he turned over to the plaintiffs for examination, and that he obtained them again from the plaintiffs before they had an opportunity to examine them. In November thereafter, *Herrick* interested the defendant *Stearns* in the undertaking, and secured from him better terms than he had made with the plaintiffs, and under date of December 2, 1892, the three defendants entered into a contract of copartnership under the firm name of J. H. Cushway & Co., "for the purpose of carrying into effect the undertaking of J. H. Cushway & Co. with the United States government regarding the purchase of timber from the Lac du Flambeau Indians of Wisconsin; that said copartners undertake to carry into effect all that pertains to the proposition of said J. H. Cushway & Co. to the commissioner of Indian affairs, and the requirements of the United States in relation thereto." Thereafter contracts with the Indians were concluded, and dated back to December 2, 1892, by which sales of timber were made to *J. H. Cushway*, *Fred Herrick*, and *Justus S. Stearns*, doing business under the firm name of J. H. Cushway & Co.; and later the mill was erected, and has since been operated, by the said firm.

In the latter part of November, 1892, the plaintiffs *Seymour Bros.* received a letter from the defendant *Herrick* bearing date November 22, 1892, in which he said, "The talk we have had as to making a deal between you, *Mr. Cartier*, and myself as to my timber at Lac du Flambeau, will not materialize." Thereafter the plaintiffs went to the reservation for an explanation of this letter, and the defendant *Herrick* there denied that they had any interest in the deal, and said to them that if they had any recourse they must take it at law. Articles of copartnership were then formed between *Herrick* and *Stearns*, with the assent of *Cushway*, to carry out the undertaking of said J. H. Cush-

way & Co. with the United States regarding the purchase
of said timber from the Lac du Flambeau Indians, in which
articles of copartnership *Cushway* acquiesced, and disclaimed
any vested or other right beyond the amount of compensa-
tion to be received by said *Cushway;* but he was not to
have any of the rights accorded to a partner. It was for
this alleged wrongful exclusion of the plaintiffs from the
firm, and the substitution of the defendant *Stearns*, who had
notice of the plaintiffs' rights, that they seek relief. The
copartnership agreement between *Herrick* and *Stearns* re-
cites that it is intended for the purpose of carrying into
effect the undertaking of the said J. H. Cushway & Co. with
the United States government regarding the purchase of
timber from the Lac du Flambeau Indians of Wisconsin, and
to carry into effect all that pertains to the proposition of
said J. H. Cushway & Co. to the commissioner of Indian
affairs, and the requirements of the United States in relation
thereto.

The principal issue of fact litigated was whether a verbal
contract of copartnership was concluded between the parties
mentioned, the defendants *Herrick* and *Stearns* having de-
nied it.   Upon this issue the testimony was extended and
elaborate.   The trial court, although it found substantially
in the plaintiffs' favor on the principal questions of fact,
held, further, that the contract relied on by the plaintiffs "is
word for word just such a partnership as the supreme court
of this state has declared to be void because not in writing"
(referring to *Bird v. Morrison*, 12 Wis. 138); and held that
the contract relied on by the plaintiffs because not in writ-
ing was in all respects a nullity; the trial judge stating: "I
am clearly of the opinion, although I come to that conclu-
sion reluctantly, that this partnership was absolutely void;
that no trust or fiduciary relationship grew out of it; that
it left *Mr. Herrick* as much at liberty to obtain this timber,
or to take in other partners, or to deal for himself alone or

with others, as though no such agreement had ever been made."

Shortly after the timber was secured from the Indians who held allotments, the interest of the defendant *Cushway* was purchased by the codefendants *Herrick* and *Stearns*, and they have since continued the business under the same firm name; and as fast as new allotments were made the President's authority of September 28, 1892, was extended so as to allow the owners of such allotments to make sale of their timber to J. H. Cushway & Co. under the terms, rules, and regulations originally so made.

The findings were numerous and extended, and, with the exceptions thereto, are contained in the record, together with the opinion of the trial court. Judgment was entered in favor of defendants, dismissing the complaint upon the merits, and for costs, from which the plaintiffs appealed.

For the appellants there were briefs by *Elliott & Hickox*, and oral argument by *E. S. Elliott* and *C. T. Hickox*. They contended, *inter alia*, that a partnership, even if formed for the purpose of dealing in land, may be created by a verbal agreement. Parsons, Partnership (4th ed.), § 6; Browne, Statute of Frauds, § 262; Ewell's Lindley, Partnership, *81; 8 Am. & Eng. Ency. of Law, 701; Bates, Partnership, § 302; 1 Warvelle, Vendors, 182, § 15; *Dale v. Hamilton*, 5 Hare, 369; *Fall River W. Co. v. Borden*, 10 Cush. 458; *Holmes v. McCray*, 51 Ind. 358, 19 Am. Rep. 735; *Speyer v. Desjardins*, 144 Ill. 641; *Morton v. Nelson*, 145 id. 586; *Bates v. Babcock*, 16 L. R. A. 745. There is a distinction between an agreement containing a stipulation resting in parol to convey land one to another, and an agreement merely for sharing in the profits or losses of a contemplated speculation in such property. The former is invalid within the decision in *Bird v. Morrison*, 12 Wis. 138, unless in writing, but the latter is not. *Treat v. Hiles*, 68 Wis. 344; *Watters v. McGuigan*, 72 id. 155; *McMillen v. Pratt*, 89 id. 630; *Read v.*

*Meagher*, 9 L. R. A. 455; *Fowler v. Bailley*, 14 Wis. 125; *Smith v. Tarlton*, 2 Barb. Ch. 336. Equity will grant relief notwithstanding the statute of frauds. It will not permit the statute of frauds to be invoked for the consummation of a fraud. 2 Pomeroy, Eq. Jur. 921; *Dana v. Duluth Trust Co.* 99 Wis. 663; *Cutler v. Babcock*, 81 id. 195; *Brook v. Chappell*, 34 id. 405. The principles of equitable estoppel apply with particular force to the facts of this case. *Brook v. Chappell*, 34 Wis. 405, 418; *Horn v. Cole*, 51 N. H. 287; *Strong v. Ellsworth*, 26 Vt. 366; *Dair v. U. S.* 16 Wall, 1–4. Where equitable relief is asked in a case proper for judgment at law, and answer made, judgment should be entered as at law. *Leonard v. Rogan*, 20 Wis. 540; *Hopkins v. Gilman*, 22 id. 476; *Combs v. Scott*, 76 id. 662; *State ex rel. Fowler v. Circuit Court*, 98 id. 143.

For the respondents there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *J. G. Flanders*. They argued, among other things, that an agreement to form a partnership to purchase land is within the statute of frauds. *Bird v. Morrison*, 12 Wis. 138; *McMillen v. Pratt*, 89 id. 612; *Clarke v. McAuliffe*, 81 id. 106; *Smith v. Burnham*, 3 Sumner, 435; *Raub v. Smith*, 61 Mich. 543; *Brosnan v. McKee*, 63 id. 454; *Rowland v. Boozer*, 10 Ala. 695; *Pecot v. Armelin Bros.* 21 La. Ann. 667; *Bailey v. Hemenway*, 147 Mass. 326; *Emerson v. Galloupe*, 158 id. 146. An agreement to join with another in the purchase of land from a third party is within the statute of frauds. *Levy v. Brush*, 45 N. Y. 589; *Erben v. Lorillard*, 19 id. 299; *Dunphy v. Ryan*, 116 U. S. 491; *Rawdon v. Dodge*, 40 Mich. 698; *Parsons v. Phelan*, 134 Mass. 109; *Bailey v. Hemenway*, 147 id. 326; *Hollida v. Shoop*, 4 Md. 465; *Green v. Drummond*, 31 id. 71; *Wallace v. Stevens*, 64 Me. 225; 8 Am. & Eng. Ency. of Law, 701. This being so, why should the rule be different where the agreement is to form a partnership to buy lands? The agreement being entirely verbal

and within the statute of frauds, it is absolutely void and
can give rise to no right of action, legal or equitable. *Brandeis
v. Neustadtl*, 13 Wis. 142; *Bailey v. Hemenway*, 147
Mass. 326; *Emerson v. Galloupe*, 158 id. 146; *Parsons v.
Phelan*, 134 id. 109; *Dunphy v. Ryan*, 116 U. S. 491; *Purcell
v. Miner*, 4 Wall. 517; *Bourke v. Callanan*, 160 Mass.
195; *Levy v. Brush*, 45 N. Y. 589. If the alleged agreement
was valid, the only remedy of the plaintiffs is at law
for damages. *Hill v. Palmer*, 56 Wis. 123; *Treat v. Hiles*,
68 id. 344; *Vance v. Blair*, 18 Ohio, 532; *Wilson v. Campbell*,
10 Ill. 383; *Doyle v. Bailey*, 75 id. 418. There is no
question of estoppel in the case. Equitable estoppel is not
a question of "ethics." To invoke it the party must have
materially altered his position upon the faith of acts or representations
upon which he had the right to rely. In this
case not only have the plaintiffs not altered their position,
but they had no right to rely upon the verbal arrangement
which they claim was made. They must have known that
a verbal agreement to form a partnership to buy land did
not make them partners, no more than did the verbal representations
of *Herrick* to third persons. *Levy v. Brush*, 45
N. Y. 589, 597; *Dunphy v. Ryan*, 116 U. S. 498; *Brandeis
v. Neustadtl*, 13 Wis. 150; *Bourke v. Callanan*, 160 Mass. 197.

Pinney, J. The agreement of partnership between the
defendants *Herrick* and *Cushway* and the plaintiffs, entered
into prior to November 22, 1892, was entirely verbal. It
provided for and contemplated the purchase of growing
timber upon lands upon the Lac du Flambeau reservation.
The purchase of this timber was the main object and central
purpose of the agreement, whether of partnership or to form
a partnership. The claims of the plaintiffs to relief, it is
apparent, rest wholly upon this alleged parol agreement to
form a partnership with the defendants *Herrick* and *Cushway*
to purchase the standing timber on the reservation and

manufacture it into lumber.  Before any interest whatever
had been acquired by the plaintiffs or any of the defendants,
and before anything had been done by the plaintiffs in the
way of performing said agreement, the defendant *Herrick*
expressly repudiated the same, and proceeded, openly and
entirely independent of the plaintiffs, to form a new part-
nership, in which neither of the plaintiffs had or acquired
any interest or control, and to acquire the timber for him-
self and his new associates.  The claim of the plaintiffs to
relief is met by the contention on the part of the defend-
ants that the agreement upon which it rests is within the
statute of frauds, and hence absolutely void, so that no
rights, legal or equitable, can be founded on it; that, even
if the agreement were valid, the only remedy of the plaint-
iffs would be an action at law for damages for the breach.

It is, and has for a long time been, settled in this state,
beyond all controversy, that standing timber is a part of the
land whereon it is standing, so that a contract for its pur-
chase is a contract for the purchase of an interest in lands,
within the statute of frauds. *Lillie v. Dunbar*, 62 Wis. 198,
202; *Daniels v. Bailey*, 43 Wis. 569; *Strasson v. Montgom-
ery*, 32 Wis. 52; *Warner v. Trow*, 36 Wis. 196; *Young v.
Lego*, 36 Wis. 394.  And it has also ·been quite generally
understood in this state that an agreement to form a partner-
ship to purchase lands, since 1860 when the case of *Bird v.
Morrison*, 12 Wis. 138, was decided, is within the statute of
frauds.  So that, whatever views may prevail in other juris-
dictions, the rule in this state may fairly be considered as
settled, and not open ·to discussion.  *McMillen v. Pratt*, 89
Wis. 612; *Clarke v. McAuliffe*, 81 Wis. 106.  And it would
seem that the construction of the statute thus announced
and so long acted upon fairly falls within the doctrine *stare
decisis*, and is no longer open for discussion at this day, after
the very able and full discussion of the question by Mr. Jus-
tice PAINE in *Bird v. Morrison, supra.*

In speaking of the effects of a verbal contract where a part of the purchase money had been paid but there was no part performance, it was held, in *Brandeis v. Neustadtl,* 13 Wis. 142, after an elaborate discussion, that "under the statute which declares that every contract 'for the sale of any lands or interest in lands shall be void unless the contract, or some note or·memorandum thereof, etc., be in writing,' a verbal contract for the sale of land is in all respects a nullity, unless there has been a part performance of it within the old equity rule upon the subject, and specific performance of it could not be decreed." The court, in speaking of such contracts, say: "The defect consists in the failure or neglect of the parties to go far enough in the performance of that which they may legally do, instead of their attempting to perform what the law forbids. The parol bargain itself is not only innocent but serviceable, as it must precede the written consummation of almost all transactions of the kind. But where they stop with the parol bargain, the statute declares the contract void, not because it is illegal, immoral or fraudulent, but because they omitted to take another step, made necessary to its validity in law. . . . The purchaser can derive no benefit from the supposed contract. Nothing passes to him by virtue of it; he obtains no interest in the land, and no promise or agreement on the part of the seller to convey him any; and he can never derive any advantage from what has transpired, except it be as a matter of favor on the seller's part. The latter suffers no damage by what has happened. He has lost or parted with nothing. His interest, control, and ownership of the land remain the same, and he is at liberty to do with it just as he might have done before." To a similar effect and application is another section of the statute of frauds, namely, sec. 2302, which declares that "no estate or interest in lands, . . . *nor any trust* or power over or concerning lands, or in any manner relating thereto, shall be created,

granted, assigned, surrendered or declared unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same."

Here there appears to have been no fraud; nothing, in fact, but a mere breach of the verbal contract to enter into and perfect the proposed purchase and partnership. The trial court found, and the evidence seems quite conclusive, that the conveyance of the timber to the defendants, rather than the plaintiffs jointly with *Herrick* and *Cushway*, was procured without any fraud, concealment, or misrepresentation whatever, unless the breach of the verbal contract on the part of *Herrick* to enter into the projected partnership and purchase can be considered such. The mere breach of a promise to convey is not enough. *Hoge v. Hoge*, 1 Watts. 213; 2 Pomeroy, Eq. Jur. 1056; *Dunphy v. Ryan*, 116 U. S. 491; *Lantry v. Lantry* 51 Ill. 458. And a party in no legal sense commits a fraud by refusing to perform a contract void by the provisions of the statute of frauds. He has not, in a legal sense, made a contract, and has a perfect right, both at law and in equity, to refuse to perform. He may stand upon the law and refuse. As said in *Brandeis v. Neustadtl*, 13 Wis. 150: "All that the parties may say or do, short of reducing their agreement to writing, expressing the consideration, and causing it to be subscribed by the party making the sale, affords the court no solid ground, or colorable pretext even, for noticing it or knowing that anything of the kind has ever transpired."

The plaintiffs have, so far as appears, wholly failed to show that they had any interest, legal or equitable, upon or in aid of which they could make any claim for protection or relief consistent with or under these statutory provisions. They were mere volunteers, without any interest or estate in these lands, legal or equitable; and as strangers to the title they have no standing in a court of equity to ask it to

interfere in their behalf. They had and have no interest in the timber. A mere stranger to the title, no matter how much fraud and deceit may have been practiced upon him by the party who has procured the title, cannot complain. The plaintiffs coming into court asserting a title to the timber, it is incumbent on them to maintain it by competent legal proof. Before a party can have a deed set aside and a trust declared in his favor, he must, by proper evidence, show that he has an equitable interest in the land, which a court of equity will recognize or enforce. *Dunn v. Schneider,* 20 Wis. 509; *Lawson v. Lawson,* 117 Ill. 98; *Conant v. Riseborough,* 139 Ill. 391. Whether the agreement was one of copartnership, or to form a partnership at some time in the future, in either case it was only an agreement. The business of the proposed partnership does not appear to have been entered upon, or any partnership accounts created. There was nothing in the case, then, but the bare agreement and its alleged breach. For this the remedy provided in the courts of law was adequate and complete, where the parties might have, as a matter of right, a trial by jury. *Hill v. Palmer,* 56 Wis. 123, quoted and approved in *Hyer v. Richmond Traction Co.* 168 U. S. 484; *Treat v. Hiles,* 68 Wis. 344; *Doyle v. Bailey,* 75 Ill. 418. The court found that the Indians knew, when they signed the contracts, that they were conveying the timber to the defendants, and not to the plaintiffs; and also that the several government officials who indorsed the contracts each knew at the time of his indorsement that the defendants were the grantees in such contracts, and that the plaintiffs had no interest therein; in short, that the conveyances were made to the defendants by the Indians knowingly and understandingly, and sanctioned by the government authorities, with full knowledge of their purport, and that the consideration therefor was paid entirely by the defendants.

The claim that there were writings in evidence sufficient

to satisfy the requirements of the statute is clearly not maintainable. No such writing is pointed out that can serve the necessary purpose. The written agreement between *Cushway* and *Herrick* to form a partnership is manifestly of no avail. The plaintiffs were not parties to it, and it was not sufficient in form or substance. To satisfy the statute, the memorandum must contain all the essential terms of the contract, either by its terms or by reference to other writings, so that it will not be necessary to resort to parol evidence to explain it. It must be definite in respect to the intention of the parties, who they are, their relation one to the other,— who is the seller, who the buyer,— the property, the price, and terms of payment. This is too well established to need authorities in support of it. The real agreement, being entirely verbal and within the statute of frauds, is absolutely void, and cannot give rise to any right of action, legal or equitable. The court found: "That the agreement of partnership between the defendant *Fred Herrick, Joseph H. Cushway*, and the plaintiffs, entered into prior to November 22, 1892, and hereinbefore mentioned, was entirely verbal; that said agreement of copartnership provided for and contemplated the purchase of growing timber upon said Lac du Flambeau reservation as a condition precedent to and as a foundation of the entry upon any other business, and that the purchase of said timber was the main and central purpose of said partnership agreement; that the partnership business contemplated by said agreement was never actually begun or entered upon, and that nothing, or substantially nothing, had ever been done by the plaintiffs, or any of them, in the way of performing said agreement."

The argument urged by counsel, that equity will not allow the statute of frauds to be made an instrument of fraud, has no application, we think, to the facts of the case. A similar argument was pressed in the case of *Levy v. Brush*, 45 N. Y. 589. The court there said (page 596): "The position, rightly

understood, is correct.   This is the basis upon which the
doctrine of specific performance of verbal contracts for the
purchase of real estate by courts of equity in cases of part
performance rests.  .  .  .   But no case can be found where
a contract has been taken out of the statute in favor of a
party who had no existing interest in the property, who had
done no act of part performance, who had parted with noth-
ing under the contract; simply upon the ground that the
other party was guilty of a fraud in refusing to perform his
verbal agreement."

It was also found that the plaintiffs paid no consideration
for the timber in question, and contributed nothing what-
ever, either of time, labor, or money, to the business of the
said Cushway & Co.; and they had not, so far as appeared,
altered their position on the faith of any promise made to
them by any of the defendants.   It is not perceived that the
facts and circumstances give rise to any trust in favor of the
plaintiffs.   Admitting that prior to the conveyance to the de-
fendants they had an agreement of copartnership with *Her-
rick* and *Cushway* to purchase the same timber, this would
not prevent *Herrick* and *Cushway* from breaking such agree-
ment, making themselves liable for damages, and forming a
new partnership to procure, if they could, the conveyance of
the timber to the new firm.

Upon the pleadings and facts contained in the record and·
findings of the court, we do not perceive any ground upon
which it can be maintained that the facts and circumstances
give rise to any trust in favor of the plaintiffs.   For the rea-
sons above stated we hold that the circuit court rightly gave
judgment dismissing the plaintiffs' complaint.

*By the Court.*— The judgment of the circuit court is af-
firmed.

Authorities as to the validity of a parol partnership for dealing in
lands are collected in a note to *Bates v. Babcock* (95 Cal. 479), in 16 L. R.
A. 745.— REP.