LANGLEY and another, Respondents, vs. SANBORN, Ap- pellant.

*January 12—March 31, 1908.*

*Partnership: What constitutes: Dealing in real estate: Statute of frauds: Pleading statute.*

1. An oral agreement to conduct partnership dealings in real es- tate is void under the statute of frauds.
2. An agreement for a mutual contribution of property to an en- terprise or venture for the purpose of making profits therein,

in which the parties to such contract were to be mutually interested as owners and not merely by way of compensation measured by profits, constitutes a partnership.

3. Defendant agreed with plaintiffs that if the latter would assign to him their option to purchase certain lands and would get for defendant an extension of the option he would have the lands examined, and if he found he could purchase them for a satisfactory price he would do so, and resell them and divide with plaintiffs the net profits realized from the venture. Plaintiffs were to share the taxes and expenses of examining the land and estimating the timber and pay interest on the purchase price paid by defendant, though it was expected that such sums would come out of plaintiffs' share of the profits. Both parties regarded the option of value, and the vendor proposed to comply therewith. In an action for damages for breach of defendant's promise, *held*, that the contract constituted a partnership to deal in real estate, and, being oral, was void under the statute of frauds.

4. An oral contract to conduct partnership dealings in land being void under secs. 2302–2304, Stats. (1898), such invalidity may be raised in an action on the contract, although the statute is not specially pleaded.

APPEAL from a judgment of the circuit court for Ashland county: ORREN T. WILLIAMS, Judge. *Reversed.*

Action for damages resulting from breach of contract. The jury found that about March 6, 1902, the defendant agreed with the plaintiffs that if the latter would turn over to him their option to purchase certain lands from J. V. Farwell and would get for the defendant an extension of the option, if desired, he would have the lands looked over, and if he found that he could purchase them for a satisfactory price he would do so and resell them within a reasonable time and divide with the plaintiffs the net profits which he would make on such resale; that the plaintiffs performed their part of the agreement; that the defendant made a purchase by means of the option, but, instead of taking the title to himself, took it in the name of a corporation controlled by him, and repudiated the whole agreement. Other facts were found not essential to be stated, and the amount of dam-

ages, for which judgment was rendered in plaintiffs' favor, from which the defendant appeals.

For the appellant there were briefs by *A. W. Sanborn*, attorney, and *John Barnes*, of counsel, and oral argument by *Mr. Sanborn*.

For the respondents there was a brief by *Reid, Smart & Curtis*, attorneys, and *M. E. Dillon*, of counsel, and oral argument by *E. M. Smart*.

The following opinion was filed January 28, 1908:

Dodge, J.    Among the many questions of fact and law controverted by counsel there is one the answer to which is so fundamental and decisive of the case as to render consideration of 'the others immaterial. For the purposes of that question it may be assumed that the findings of the jury mentioned in the statement of facts are all sustained by the evidence, and that the contract on plaintiffs' part has been so fully executed as to take it out of the statute of frauds, and that the option which they purported to hold and which they transferred was of sufficient validity to serve as a consideration for defendant's promise. But, after conceding all such matters, it is still urged that plaintiffs' promise was merely to launch and conduct partnership dealings in real estate and is therefore void under the statute of frauds. *Bird v. Morrison*, 12 Wis. 138; *McMillen v. Pratt*, 89 Wis. 612, 631, 62 N. W. 588; *Seymour v. Cushway*, 100 Wis. 580, 76 N. W. 769; *Smith v. Putnam*, 107 Wis. 155, 82 N. W. 1077, 83 N. W. 288; *Scheuer v. Cochem*, 126 Wis. 209, 213, 105 N. W. 573. An accurately inclusive and exclusive definition of partnership seems to have eluded the capacity of courts to express. It was said by the late chief justice in *Sullivan v. Sullivan*, 122 Wis. 326, 99 N. W. 1022:

"A very learned English master of the rolls (Sir George Jessel) refrained from making any attempt to define a partnership, because there had been so many attempts with

no two agreements, except in a general way. *Pooley v. Driver,* L. R. 5 Ch. Div. 458, 471. In that case it was held that: 'In the absence of something in the contract to show a contrary intention, the right to share profits *as profits* constitutes, according to English law, a partnership.' "

A definition was thus phrased by BARDEEN, J., in *Serfling v. Andrews,* 106 Wis. 78, 81 N. W. 991:

"The usual test of a partnership is whether there is a community of interest in the profits and losses of the business. Any arrangement which gives the parties such a community of interest constitutes them partners."

LYON, C. J., in *Spaulding v. Stubbings,* 86 Wis. 255, 262, 56 N. W. 469, approved a more specific definition from 1 Bates, Partn. § 1:

"A partnership is the contract relation subsisting between persons who have combined their property, labor, or skill in an enterprise or business as principals for the purpose of joint profit."

But this definition is far too limited to stand the test of practical application. There need be no combining of property, for one alone may contribute all the property. Neither need there be combining of skill or labor, for this, too, may be the contribution of only one partner. *Treat v. Hiles,* 63 Wis. 344, 32 N. W. 517. Again, it has been held that there need be no express agreement for any sharing of losses. *Clinton B. & I. Works v. First Nat. Bank,* 103 Wis. 117, 122, 79 N. W. 47. Thus we are brought back to the one element relied on by Sir GEORGE JESSEL, of a community of interest in the profits of the business *as profits;* and yet this is elusive and difficult of application, for there are many decided cases which have denied a partnership notwithstanding an agreement that some proportion of the profits should be received by the party sought to be charged as a partner. This, however, will be found to have been on the ground that it was apparent from the whole transaction that it was

not the agreement that he should become interested in the profits as profits of the enterprise, but merely as a measure of compensation for the services, property, or opportunity furnished by him in aid of the business which, notwithstanding, was held to be the separate business of the other party alone. *Hoile v. York,* 27 Wis. 209; *Ford v. Smith,* 27 Wis. 261; *Nicholaus v. Thielges,* 50 Wis. 491, 7 N. W. 341; *Sohns v. Sloteman,* 85 Wis. 113, 55 N. W. 158. Cases in this state in which the conclusion of partnership has been reached, mainly on the ground of community of interest in the profits, although often in combination with other circumstances, are *Whitney v. Ludington,* 17 Wis. 140; *Miller v. Price,* 20 Wis. 117; *Wood v. Beath,* 23 Wis. 254; *Upham v. Hewitt,* 42 Wis. 85; *Rosenfield v. Haight,* 53 Wis. 260, 10 N. W. 378; *Watters v. McGuigan,* 72 Wis. 155, 39 N. W. 382; *Clinton B. & I. Works v. First Nat. Bank,* 103 Wis. 117, 79 N. W. 47.

After careful consideration of the situation it appears to us that the contract expressed in the first finding of the jury in the present case, as amplified by the undisputed evidence, shows a mutual contribution of property to an enterprise or adventure for the purpose of making profits therein in which the two parties were to be mutually interested as partners, and not merely by way of compensation measured by the profits which the defendant should make. We reach the conclusion that there was mutuality in the contribution of property to the enterprise to be entered upon for the reason that it is obvious that both parties considered the so-called option of value. It might have had no legal and irrevocable validity as between Farwell and the plaintiffs, and yet, before plaintiffs and the defendant negotiated, it had become apparent that Farwell purposed to be controlled by a moral obligation which rendered that option effective through the term thereof to enable the plaintiffs to purchase the lands, but more especially to exclude the defendant or any one else

from doing so; also, in practical effect, both the defendant and Farwell recognized the informal acts of the plaintiffs in turning over the option as at least tantamount to a release of the former from such moral obligation, so that he was free to deal with the defendant, and thus the latter was enabled to make the purchase and enter upon the adventure, the profits whereof were agreed to be divided. Further, the understanding, as plaintiffs admit, was that they should share the taxes and the expense of examining the land and estimating the timber, and should pay interest on the purchase price paid by defendant, although they expected these sums to be paid out of their half of the profits. The proposed enterprise most clearly contemplated a dealing directly in real estate, not merely a use of the land to facilitate other business, as in *Treat v. Hiles,* 68 Wis. 344, 32 N. W. 517. Hence we can find no escape from the conclusion that the defendant's promise to form the partnership was legally void. Being so void, of course no action can be maintained for damages for the breach. *Seymour v. Cushway,* 100 Wis. 580, 76 N. W. 769.

Contention is made by the respondents that the invalidity by reason of the statute of frauds of such contract cannot be raised unless pleaded, and cite us to a collection of cases in 9 Ency. Pl. & Pr. 705, wherein it is held that the defense of the statute is waived unless specially pleaded. It was noticed in *Brandeis v. Neustadtl,* 13 Wis. 142, and again in *Smith v. Putnam,* 107 Wis. 155, 163, 82 N. W. 1077, 83 N. W. 288, that our statute—secs. 2302–2304, Stats. (1898)—differs radically from the statute of frauds of England and of most of the states, in that, while they declare that such contracts, unless in writing, shall not be received in evidence or shall not be made the foundation of an action, ours declares that the inhibited contracts shall be "void," from which would seem to result the proposition that, when the plaintiff counts on such a contract and the same is not ex-

pressly admitted by the answer, he fails to establish his allegation thereof when he merely proves an oral agreement which is no contract. This distinction is noted at page 709 of the volume of the Encyclopædia above cited. The question is, however, set at rest in Wisconsin by *Popp v. Swanke,* 68 Wis. 364, 31 N. W. 916, and by numerous cases in which the invalidity of an oral contract has been recognized and declared by the court, although no reference thereto was made in the pleadings. *Koch v. Williams,* 82 Wis. 186, 52 N. W. 257; *Crowley v. Hicks,* 98 Wis. 566, 74 N. W. 348; *Comm. Nat. Bank v. Smith,* 107 Wis. 574, 83 N. W. 766.

The result is that the evidence is conclusive that the *agreement* described in the first question of the special verdict was not made, and the affirmative answer of the jury should have been reversed on defendant's motion to that effect, whereupon judgment for defendant should have been rendered.

*By the Court.*—Judgment reversed, and cause remanded with directions to render judgment for defendant.

The respondents moved for a modification of the mandate so as to grant a new trial or permit the court below to grant a new trial, or for a rehearing in this court.

In support of the motion there was a brief by *Reid, Smart & Curtis* for the respondents, and a brief by *W. H. Frawley & T. F. Frawley, amici curiæ.*

In opposition to the motion there was a brief by *A. W. Sanborn,* attorney, and *John Barnes,* of counsel.

The motion was denied March 31, 1908.