HUNTINGTON, Executor, Appellant, vs. BURDEAU, Respondent.

*March 12—April 23, 1912.*

*Appeal: Review: Findings of fact: Partnership: Oral contract: Statute of frauds: Executed transactions: Accounting: Receivers.*

1. The superior advantages of a referee to judge of the credibility and weight of the evidence entitle his findings to peculiar force in a case where the evidence is vague, uncertain, and susceptible of conflicting constructions or applications.
2. Although an oral agreement to conduct partnership dealings in lands is void under the statute of frauds, yet where such contract has been fully executed by the parties, or fully executed as to certain separable and independent transactions, so that nothing remains to be done but to ascertain the money balance due from one partner to the other, it is, as to such completed transactions, not within the statute, and equity will entertain an action between the partners for an accounting.
3. In such an action the court cannot appoint a receiver in respect to alleged assets of the partnership remaining unconverted, since to do so would be to execute a void contract.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Modified and affirmed.*

The complaint in substance alleges that on or about the 1st day of October, 1903, the plaintiff and the defendant formed a partnership for the purpose of buying and selling

real estate in and around Brown county, Wisconsin, under an. agreement that the plaintiff should contribute one half of the money needed for various deals that should arise, and that the defendant should pay the other half; that the parties co-operate in the care and labor of the business, and that the plaintiff should receive one half of the net profits, to be divided after each deal was completed; that all lands were to be purchased for speculation only and not for personal or individual purposes; that said plaintiff and defendant entered upon, and have ever since continued to carry on, said partnership business under and in pursuance of said agreement; that since the commencement of said partnership the defendant has from time to time applied to his own use from the receipts of said business large sums of money, greatly exceeding the proportions thereof to which he was entitled as his share, and has. never accounted for said moneys to this plaintiff, although he was frequently demanded so to do; that the defendant has. received the sum of $750 over and above his due proportion of the partnership profits, and that he continues to appropriate this money to his own use.

The relief asked for by the plaintiff is (1) that the said copartnership may be dissolved and an account be taken of all the copartnership dealings and transactions from the commencement thereof, and of the moneys received and paid by plaintiff and defendant, respectively, in relation thereto;. (2) that the property of the copartnership be sold and divided between the plaintiff and defendant; (3) that in the meantime the defendant be enjoined from collecting and receiving, or from in any manner interfering or intermeddling with, or disposing of, the partnership money or property; (4) that a receiver of the partnership moneys and property be appointed with the usual powers and duties; and (5) for such other and further relief as may be just and equitable, together with the costs and disbursements of this action.

The answer alleged (1) that between the 1st day of Octo-

ber, 1901, and the 1st day of May, 1904, plaintiff and defendant purchased five pieces of property together for the purpose of sale, each agreeing to contribute one half of the purchase price and to divide equally the profits to be earned after paying all expenses incidental to the holding and sale thereof; that said pieces of property were as follows: Crook's farm; Twilliger farm; Boetker farm; Roberts farm (also known as the Zimball farm); and Styres farm; (2) that defendant never entered into any general partnership with the plaintiff to carry on the sale of real estate or for the purpose of carrying on business, and that the above transactions were distinct and separate transactions; (3) defendant, further answering plaintiff's complaint, alleges that he has fully paid plaintiff all moneys coming to him from defendant and that he is not indebted to him in any sum whatever; (4) except as so admitted defendant denies each and every allegation contained in plaintiff's complaint.

The answer then set out four counterclaims, of which the third only is material to the issues, and that was for goods, wares, and merchandise sold and delivered to the plaintiff at his special instance and request, and upon which the defendant recovered the sum of $421.20. The action was begun and tried during the lifetime of the plaintiff William Cook, but final judgment was not rendered till after his death. The case was referred to Carlton Merrill, Esq., to hear, try, and determine. The referee filed three separate reports, the last one being dated September 17, 1909. In that report the referee thus states the partnership account, for convenience, as against *Burdeau:*

| "W. E. Burdeau in account with William Cook. | Dr. | |
|---|---|---|
| To amt. due Cook on Twilliger-Boetker deal.............. | $981 | 49 |
| To am. due Crook....................................... | 513 | 17 |
| "       "   Zimball (Roberts)........................... | 165 | 37 |
| "       "   Boulet ..................................... | 49 | 00 |
| "       "   Styres ..................................... | 271 | 62 |
| "       "   Cheese factory deal........................ | 25 | 00 |
| Total ............................................ | $2,005 | 65 |

Huntington v. Burdeau, 149 Wis. 263.

|  |  | Cr. |  |  |  |
|---|---|---|---|---|---|
| By cash | | $1,000 | 00 | | |
| " | | 252 | 70 | | |
| " | | 100 | 00 | | |
| " | | 168 | 50 | | |
| Due from Cook on Wittold deal | | 191 | 00 | | |
| | | $1,712 | 20 | $1,712 | 20 |
| Balance due from Burdeau to Cook on partnership matters | | | | $293 | 45 |
| Due to Burdeau from Cook on third counterclaim | | | | $421 | 20 |
| Due Cook on partnership matters | | | | 293 | 45 |
| Balance due Cook to Burdeau | | | | $127 | 75 |

The plaintiff would be entitled to the appointment of a receiver to take possession of the mortgage of $450 on the Styres land—the Smith land contract for $400, and the four lots in Cady & Burdon's Addn. to convert them into money, pay first the balance of $127.55 due Burdeau and divide balance between Cook and Burdeau equally."

The court confirmed the report of the referee dated July, 1909, wherein the referee found that there was due defendant from the plaintiff on the third counterclaim the sum of $421.20, and that there was nothing due on the partnership account for the reason that the agreements for the purchase and sale of real estate, being in parol, were void, and that neither party was bound to account for the proceeds or profits thereof, and it disregarded the report dated September 17, 1909. From a judgment entered in favor of the defendant on his third counterclaim in the sum of $421.20, together with costs and disbursements, and dismissing plaintiff's complaint on the merits, the plaintiff appealed.

*Sol. P. Huntington,* for the appellant.

For the respondent there was a brief by *Kittell & Burke,* and oral argument by *J. A. Kittell.*

VINJE, J. Each side takes exceptions as to the correctness of the referee's findings contained in the last report dated September 17, 1909, claiming the referee erred in the allowance

of both credit and debit items.    In his second report the ref-
eree said:

"The plaintiff and defendant are uncle and nephew.    For
years they have lived in the same neighborhood in the town
of Suamico, apparently on the most friendly terms.    *Burdeau*
ran a general store where Cook got his household supplies, etc.,
on running account.    There were during the same period cov-
ered by the matters in controversy, dickers, dealings, and joint
speculations between them other than those involved in this
suit, in which considerable money passed between them from
hand to hand.    Except the store book account and some mem-
oranda made by *Burdeau* in a little pocketbook, there seems
to have been no account kept of their dealings.    They both
testify much from memory as to happenings of several years
past.    It is probably beyond human power to determine ex-
actly what is equitably due one to the other.    The evidence is
meager in exact dates and in description of property, and in
many instances wanting entirely; but the dealings took place
between October, 1901, and the commencement of this action."

In view of the situation of the parties and the state of the
evidence it is not surprising that both sides excepted to the
findings made.    We have carefully examined the evidence
and are satisfied it warranted the characterization given it by
the referee.    The findings made are all supported by evidence,
and we cannot say there is such a clear preponderance thereof
against any finding as to warrant us in setting it aside.    The
superior advantages of the referee to judge of the credibility
and weight of the evidence is peculiarly applicable to a situa-
tion like the one before us where the evidence is vague, un-
certain, and susceptible of conflicting constructions or applica-
tions.

The really important question on this appeal is whether or
not the court erred in holding that plaintiff could not be cred-
ited with the amount of $293.45 found due him on the part-
nership deals in lands on the ground that the contract to deal
in them was oral and so void under the statute of frauds.

That an oral agreement to conduct partnership dealings in lands is void under the statute of frauds (sec. 2302, Stats. 1898) was held by this court as early as *Bird v. Morrison,* 12 Wis. 138, and has been steadily adhered to since. *Clarke v. McAuliffe,* 81 Wis. 104, 51 N. W. 83; *McMillen v. Pratt,* 89 Wis. 612, 62 N. W. 588; *Seymour v. Cushway,* 100 Wis. 580, 76 N. W. 769; *Smith v. Putnam,* 107 Wis. 155, 82 N. W. 1077, 83 N. W. 288; *Scheuer v. Cochem,* 126 Wis. 209, 105 N. W. 573; and *Langley v. Sanborn,* 135 Wis. 178, 114 N. W. 787.

In the case of *Bird v. Morrison, supra,* plaintiff sought to establish an equitable interest in lands purchased by his partner, Morrison, under an oral agreement that they were to have equal interests therein. The court was asked to declare that one half of the legal title held by Morrison's grantee—the trial court having found he purchased with notice—was held in trust for the plaintiff. The judgment asked affected title to land. In *Clarke v. McAuliffe, supra,* the action was for an accounting of partnership matters, for a dissolution of the partnership, and for recovery of one half the profits of the purchase and sale of a piece of land. It was alleged that defendant took title in his own name, sold it at a profit of $23,000, and plaintiff sought to recover, among other things, his share of the profits. The court held that he could not, because the agreement to buy for joint profit was oral, and void under the statute, and defendant had at all times repudiated it and had at no time paid any portion of the profits over to the plaintiff. In *McMillen v. Pratt, supra,* it was held that an action at law could not be maintained for damages for breach of an oral agreement for a partnership for the purchase of standing timber or lands. The court said:

"It is not material to consider what remedies may be had in a court of equity where there has been a part performance of such an agreement, or in actions of fraud or deceit in reference thereto, for at law neither party has any standing to

recover damages against the other for a breach of such an agreement."

The case of *Seymour v. Cushway*, 100 Wis. 580, 76 N. W. 769, was an action to have a trust declared in certain standing timber, the legal title to which had been conveyed to the defendants, and in the profits derived by them from the business of manufacturing it into lumber, and, as it appeared there was no fraud and nothing more than a mere breach of the oral contract to enter into and perfect the proposed partnership and purchase, equity refused to enforce it. In *Scheuer v. Cochem*, 126 Wis. 209, 105 N. W. 573, the court distinguished the case from *Smith v. Putnam*, 107 Wis. 155, 82 N. W. 1077, 83 N. W. 288, on the ground that the oral agreement had not been sufficiently carried out so that it could be treated as an executed contract, as was the latter case, where nothing was left to be done but the ascertainment of a money balance due from one partner to another. The case of *Langley v. Sanborn*, 135 Wis. 178, 114 N. W. 787, was for damages for breach of an oral contract to conduct partnership dealings in land.

It will thus be seen that in each of the above cases, except *Smith v. Putnam*, either a trust in lands or the proceeds thereof was sought to be declared, or the oral agreement was wholly or partially unexecuted, or damages were sought for its breach. In each case the court was asked to give force and effect to the void oral agreement to an extent at least further than the parties had recognized it even where there was a partial execution of it. In the case of *Smith v. Putnam* it was held that where the parties had so far completed all the transactions as to leave nothing necessary to be done by the court but the ascertainment of a money balance due from one party to the other, the void contract would be treated as a fully executed one, and therefore not within the purpose or scope of the statute. The cases of *Bird v. Morrison*, 12 Wis. 138; *Clarke v. McAuliffe*, 81 Wis. 104, 51 N. W. 83; *McMillen v.*

*Pratt,* 89 Wis. 612, 62 N. W. 588, and *Seymour v. Cushway,* 100 Wis. 580, 76 N. W. 769, were cited and approved by this court in *Smith v. Putnam.* But it was there said:

"In applying the statute of frauds, courts long since recognized an exception, or more properly a distinction, in cases where a contract void by the statute had been fully executed, and one party sought to retain the fruits of the dealing in defiance of his promises. Such situation was declared to be not within the purpose of, and so not sheltered by, the statute. It has therefore been held in a vast array of decided cases that where the parties have fully executed all parts of such a contract relating to or affecting interests in land, so that the courts do not need to enforce anything with reference to the land itself, the rights and duties of the parties resulting from their dealings may be enforced, and each of them prevented from using that statute, not as a protection against, but as an effective means of, fraud. Browne, Stat. Frauds, § 116; *Rice v. Roberts,* 24 Wis. 461; *Niland v. Murphy,* 73 Wis. 326, 41 N. W. 335; *Pireaux v. Simon,* 79 Wis. 392, 48 N. W. 674; *Trowbridge v. Wetherbee,* 11 Allen, 361; *Bowen v. Bell,* 20 Johns. 338; *Remington v. Palmer,* 62 N. Y. 31; *Bork v. Martin,* 132 N. Y. 280, 30 N. E. 584; *Hodges v. Green,* 28 Vt. 358; *Gordon v. Tweedy,* 71 Ala. 202; *Negley v. Jeffers,* 28 Ohio St. 90; *Galley v. Galley,* 14 Neb. 174; *Ryan v. Tomlinson,* 39 Cal. 639, 645; *Bibb v. Allen,* 149 U. S. 481, 497, 13 Sup. Ct. 950."

In the case at bar all partnership transactions, except those relating to the mortgage of $450, the land contract for $400, and the lots yet unsold, are completely closed up, and nothing remains to be done but to ascertain the amount due thereon from one partner to the other. These transactions, too, like those in the *Smith Case,* are entirely independent and separate from those not yet fully executed. The answer alleges that each deal was a separate and distinct transaction. The defendant paid plaintiff from time to time at least a portion of the profits of each deal. He claims he paid plaintiff all the profits due him on all the deals. We have, therefore, as to the deals fully closed, a case exactly similar to *Smith v.*

*Putnam,* namely, the mere determination of the correct amount due each partner on deals otherwise fully executed. Plaintiff claims he has not been paid the correct amount, and the defendant claims he has.   In *Smith v. Putnam* it was held that such a situation took the void agreement out of the statute, and it was further held that, in the absence of seasonable objections, the partnership account could be stated in an action at law.   Here the action was brought in equity and a partnership admitted as to each of the five separate deals.

We conclude, therefore, that the trial court erred in refusing to deduct from the amount found due the defendant on his counterclaim, to wit, the sum of $421.20, the sum found due the plaintiff on the deals fully closed, to wit, the sum of $293.45.

The court cannot appoint a receiver to take charge of the mortgage, land contracts, and lots unsold.   To do so would be to execute a void contract.   As to those deals the parties must be left where they are.

*By the Court.*—Judgment modified by deducting therefrom as of the day of its rendition the sum of $293.45, and, as so modified, affirmed, with costs in favor of the appellant.